## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff/Respondent,

vs.                                        Nos. CIV 16-0240 JB/LAM
                                                  CR 07-0788 JB

PHILLIP ANGEL GARCIA,

       Defendant/Movant.

## MEMORANDUM OPINION AND ORDER OVERRULING THE MAGISTRATE JUDGE'S AMENDED PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on the Magistrate Judge's Amended Proposed Findings and Recommended Disposition, filed November 1, 2016 (Doc. 30)("PFRD"), entered pursuant to the Court's Memorandum Opinion and Order, filed September 28, 2016 (Doc. 23)("MOO"). On November 14, 2016, Defendant/Movant Phillip Angel Garcia filed Mr. Garcia's Objections to Certain Magistrate Judge's Proposed Findings, filed November 14, 2016 (Doc. 31)("Objections"). Plaintiff United States of America did not file objections to the PFRD. The United States' deadline for filing a response to Garcia's Objections was December 1, 2016, and the United States similarly did not file a response to Garcia's Objections. The Court has conducted a de novo review of those portions of the PFRD, authored by the Honorable Judge Lourdes Martínez, United States Magistrate Judge for the District of New Mexico, to which Garcia objects, and concludes that, although his Objections lack a sound foundation in the facts and in the applicable law, the PFRD similarly reaches a conclusion that the Court adopts only in part. The Court notes that, by his Objections, Garcia did not object to Judge Martínez' disposition -- instead, Garcia objected only to Judge Martínez' analysis. Regardless, because Garcia's Objections found the Court's de novo review of Garcia's specific Objections to the

PFRD, the Court is also forced, by Garcia's Objections, to analyze each issue at play in this case and disagrees in part with Judge Martínez' and Garcia's analyses and conclusions. The primary issues are: (i) whether robbery in New Mexico, N.M. Stat. Ann. § 30-16-2, is a "violent felony" for the purposes of the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"); and (ii) whether a court, on a petition under 28 U.S.C. § 2255 to review a sentencing court's ACCA application, is restricted to consideration of a defendant's prior convictions that were explicitly listed as predicate felonies in a Presentence Report, filed June 24, 2016 (Doc. 11)("PSR"), or if, instead, a court can consider whether defendant's additional felonies listed elsewhere in that report are ACCA predicate felonies. The Court concludes that, in New Mexico, robbery is a "violent felony" and that the Court can consider Garcia's robbery conviction, the existence of which all parties knew at the initial sentencing, even though the United States Probation Office ("USPO")  did not explicitly list as one of Garcia's ACCA predicate felonies in the PSR. Accordingly, the Court will: (i) overrule the Objections as lacking a sound foundation in the facts and in the applicable law; (ii) adopt in part and deny in part the PFRD; (iii) deny Mr. Garcia's Motion for Expedited Decision and Resentencing, filed May 27, 2016 (Doc. 8)("Motion for Expedited Decision"); and (iv) deny Mr. Garcia's Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255, filed March 30, 2016 (Doc. 1)("Motion").

## FACTUAL BACKGROUND

On April 24, 2007, Garcia was indicted on the charge of possessing a firearm and ammunition after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  See Redacted Indictment, filed April 24, 2007 (Cr. Doc. 12)("Redacted Indictment").  On December 13, 2007, Garcia entered into a Plea Agreement, filed December 13, 2007 (Cr. Doc. 41)("Plea Agreement"), in which he pled guilty to the "one-count indictment

charging a violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2), that being Felon in

Possession of a Firearm and Ammunition," as alleged in the Redacted Indictment.  See Plea

Agreement at 1-2.  By the Plea Agreement, "The United States has made, and will make, NO

AGREEMENT pursuant to Rule 11(c)(1)(C), Fed. R. Crim. P., that a specific sentence is the

appropriate disposition of this case."  Plea Agreement at 3.  Garcia admitted that

> Prior to February 22, 2007, I had previously been convicted of the following
> felony convictions: Robbery in the Second Judicial District Court for the State of
> New Mexico in case number CRCR 96-03943, Unlawful Taking of a Vehicle in
> the Second Judicial District Court for the State of New Mexico in case number
> CRCR 96-3943, Arson in the Second Judicial District Court for the State of New
> Mexico in case number CRCR 96-03943, Residential Burglary in the Second
> Judicial District Court for the State of New Mexico in case number CRCR 97-
> 03978, Possession of a Deadly Weapon by a Prisoner in the Second Judicial
> District Court for the State of New Mexico in case number CR 99-00548,
> Receiving and Transferring a Stolen Vehicle in the Second Judicial District Court
> for the State of New Mexico in case number CR 99-03043, and Possession of a
> Controlled Substance in the Second Judicial District Court for the State of New
> Mexico in case number CR 05-03651.

Plea Agreement at 5.

## PROCEDURAL BACKGROUND

On December 10, 2007, the USPO disclosed a PSR, concluding that Garcia is subject to

the ACCA, which mandates a minimum fifteen-year term of imprisonment.  See PSR at 4.  For

the conclusion, the USPO relied on Garcia's prior convictions for arson, residential burglary, and

possession of a deadly weapon by a prisoner, providing:

> The following prior convictions that were used to trigger this enhancement are as
> follows: Count 10, Arson (Over $1,000) (Felony), as charged in the Second
> Judicial District Court, in Albuquerque, New Mexico, case number CR 96-3943;
> Residential Burglary, as charged in the Second Judicial District Court, in
> Albuquerque, New Mexico, case number CR 97-3978; and Count 1, Possession of
> a Deadly Weapon By a Prisoner, as charged in the Second Judicial District Court,
> in Albuquerque, New Mexico, case number CR 99-548.

PSR at 10.  The PSR nonetheless recounts Garcia's criminal history, listing his prior conviction for New Mexico robbery, amongst all others.  See PSR at 13-14.  Indeed, on December 12, 2007, the United States filed its Notice of Intention to Seek Enhanced Sentence Pursuant to the Armed Career Criminal Provisions of 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4, filed December 12, 2007 (Cr. Doc. 40)("Notice"), in which the United States "inform[ed] the defense and the Court that it will be relying upon [Garcia's] violent felony convictions [for robbery, arson, possession of a deadly weapon by a prisoner, and burglary] to animate the enhanced penalty provision[s] of 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4."  Notice at 2.  Accordingly, on December 13, 2007, Garcia entered into the Plea Agreement in which he pled guilty to the "one-count indictment charging a violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2), that being Felon in Possession of a Firearm and Ammunition," as alleged in the Redacted Indictment.  See Plea Agreement at 1-2.

On October 1, 2008, the Honorable Senior Judge John Conway, United States District Judge for the District of New Mexico, sentenced Garcia to 188 months of imprisonment, and recommended that Garcia's sentence run concurrently with his state cases that were then pending in New Mexico State Court.  See Judgment at 1-2, filed October 1, 2008 (Cr. Doc. 61)("Judgment").  Judge Conway also concluded that "the defendant, a six-time convicted felon, was in possession of a firearm."  Transcript of Hearing at 6:5-6, taken October 1, 2008 ("Tr.")(Conway).  In addition, Judge Conway sentenced Garcia to a term of supervised release for three years.  See Judgment at 3.

On March 30, 2016, Garcia filed the Motion in which he contends that his sentence is unconstitutional pursuant to the Supreme Court of the United States' recent decision in Johnson v. United States, 135 S. Ct. 1551 (2015)("Johnson II").  See Motion at 2.  Garcia contends that

his conviction for possession of a deadly weapon by a prisoner was a conviction for a violent felony under the ACCA solely because it fit within the residual clause, which the Supreme Court found to be unconstitutionally vague in <u>Johnson II</u>.  <u>See</u> Motion at 1, 13-14.  In addition, Garcia contends that his conviction for New Mexico robbery does not maintain justification for his ACCA enhancement, because New Mexico's third-degree robbery statute does not require force sufficient to meet ACCA's "physical force" or "violent force" clause.  <u>See</u> Motion at 17 (relying on <u>Johnson v. United States</u>, 559 U.S. 133, 140 (2010)("<u>Johnson I</u>")(describing the physical force clause, and holding that the crime in question must entail "violent" force).  Garcia contends that, because the ACCA enhancement requires three previous convictions for a violent felony or for a serious drug offense, and because Garcia "only has at most two, not three, previous convictions for 'violent felonies' that the district court relied on," he is thus not subject to the ACCA enhancement.  Motion at 14.  Based on these arguments, Garcia asks the Court to vacate his sentence and resentence him to no more than the ten-year maximum sentence to which he would be subject absent the ACCA enhancement.  <u>See</u> Motion at 2, 14.

In its response to Garcia's § 2255 Motion, the United States concedes that Garcia's conviction for possession of a deadly weapon by a prisoner no longer supports his ACCA eligibility after <u>Johnson II</u>.  <u>See</u> United States' Response to Mr. Garcia's Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255 at 2, filed May 16, 2016 (Doc. 6)("Response").  Nevertheless, the United States notes that it initially, in 2008, contended that Garcia had four predicate violent felonies under the ACCA -- burglary, robbery, arson, and possession of a deadly weapon by a prisoner -- and that, even absent the possession of a deadly weapon by a prisoner conviction, Garcia still has three qualifying predicate convictions.  <u>See</u> Response at 2 (referencing the United States' Notice at 2).  The United States further contends that <u>Johnson I</u> is

nonetheless not retroactive, and that because Garcia's robbery offense qualified as a violent felony at the time he was sentenced, it still qualifies.  See Response at 2-3.  In addition, the United States notes that the USPO filed a Sentencing Memorandum, filed July 14, 2016 (Doc. 13)("Memorandum"), stating that Garcia's remaining convictions for robbery, burglary, and arson all meet the definition of violent felonies under the ACCA, and therefore Garcia is an armed career criminal and is not eligible for a sentence reduction.  See Memorandum at 1.

On August 11, 2016, the United States filed its Supplemental Government Response/Notice of Concession, filed August 11, 2016 (Doc. 17)("Supplemental Memorandum"), stating that, "in another case[,] the government has conceded that New Mexico's robbery statute is not a violent felony for purposes of the [ACCA]." Supplemental Memorandum at 1 (citing to United States v. Sanchez, No. CR 13-0961 JAP, No. CIV 16-0659 JAP/GBW (D.N.M. 2016)).  The United States explains that its "initial response in this case was filed prior to the formation of a committee designed to uniformly determine Johnson [II] [§] 2255 matters," and that "the United States seeks to withdraw its argument as to non-retroactivity, as it has been learned subsequent to the filing of the initial response that the department has advised against making such procedural arguments."   Supplemental Memorandum at 1.  In addition, the USPO filed its own Revised Sentencing Memorandum, filed August 18, 2016 (Doc. 19)("Revised Memorandum"), stating that Garcia's robbery conviction is not a violent felony because the New Mexico robbery statute "does not require the level of force necessary to qualify as a violent felony under the elements clause," and that Garcia is thus eligible for resentencing.  Revised Memorandum at 2.  On August 18, 2016, based on the United States' concessions and the USPO's Revised Memorandum, the Magistrate Judge issued her first Proposed Findings and Recommended Disposition, filed August 18, 2016 (Doc. 20)("First

PFRD"), concluding that Garcia no longer has three predicate felonies to support a determination that he is an armed career criminal under the ACCA, and recommending that the Court vacate Garcia's sentence and set his case for resentencing as soon as possible.  See First PFRD at 4.

On September 28, 2016, the Court entered its MOO stating that, on July 26, 2016, in United States v. Barela, No. CR 15-3550 JB ("Barela"), the United States filed a response to that defendant's objections to his Presentence Report where it argued that New Mexico's robbery statute, N.M. Stat. Ann. § 30-16-2, is a violent felony for the purposes of the United States Sentencing Guidelines § 4B1.4 enhancement.  See MOO at 1.  The Court agreed with the United States' arguments in Barela, as set forth in the Memorandum Opinion and Order it entered in that case on September 16, 2016.  See Memorandum Opinion and Order, filed September 16, 2016 (Doc. 44 in No. CR 15-3550)("Barela MOO").  The Court noted that the United States has taken a different position in this case, so the Court posed four questions to the United States asking it to clarify its position, and asked Judge Martínez to prepare another PFRD analyzing the issues presented in Garcia's § 2255 Motion in the absence of the United States' concessions.  See MOO at 4-6.  The Court asked the United States:

> 1.  If the Court holds that Defendant Phillip Angel Garcia has four predicate violent felonies under ACCA and that, even absent the possession of a deadly weapon by a prisoner, Garcia still has three useable predicate convictions, will the United States defend on appeal the Court's decision to use predicate convictions that Judge Conway and the USPO, at the time of sentencing, did not use?  Will it defend the Court's procedure or will it confess error?  The Court is having a hard time seeing why it should set aside a conviction if, at the new sentencing, it is going to still find that he has three violent predicate convictions.

> 2.  If the Court determines that Johnson v. United States, 559 U.S. 133, 140 (2010)("Johnson 1"), is not retroactive, will the United States defend that position or confess error?

> 3.  If the Court determines that, in relevant part, the Florida battery statute in Johnson 1 cannot be distinguished from New Mexico's robbery offense, will the United States defend that position or confess error?

4.  If the Court determines that New Mexico's robbery statute is a violent felony for ACCA purposes -- as the United States argued on July 27, 2016, in <u>United States v. Barela</u> -- will the United States defend that position on appeal or confess error?  The Court is having a harder time ignoring the United States Court of Appeals for the Tenth Circuit decision, in <u>United States v. Lujan</u>, 9 F.3d 890 (10th Cir. 1993), than the parties and the USPO are apparently having.

MOO at 4-5.

> 1.      **<u>The United States' Response to the MOO Addressing Barela.</u>**

In its response to the MOO, the United States explains that it filed its Response in this case on May 16, 2016, and that, "[t]hereafter, the United States Attorney's Office formed a committee in [an] effort to uniformly respond to the substantial number of § 2255 motions that were being filed."  <u>See</u> Response to Memorandum Opinion and Order at 1, filed October 18, 2016 (Doc. 28)("MOO Response").   The United States explains that it responded to the defendant's objections in <u>Barela</u> on July 27, 2016, which was before the aforementioned committee's determination that New Mexico's robbery offense at N.M. Stat. Ann. § 30-16-2 no longer qualifies as a violent felony pursuant to the holding in <u>Johnson I</u>.  <u>See</u> MOO Response at 1 ("The United States declared its position [regarding New Mexico's robbery offense] in its filing of August 5, 2016 in the case of <u>United States v. Sanchez</u>, 13-CR-961, 16-CV-659.").  On August 11, 2016, the United States filed its Supplemental Memorandum in this case, "which aligned the government's position in the instant case to that in <u>Sanchez</u>."  MOO Response at 1-2.  The United States explains that, regardless of the new position taken by the United States in this case, the United States' position in <u>Barela</u> related to whether New Mexico's robbery statute constitutes a crime of violence under the U.S.S.G. and not under the ACCA.   <u>See</u> MOO Response at 2 (explaining that "<u>Barela</u> was not an ACCA case" and that "[t]he Court's determination, rather, hinged on the <u>sentencing guidelines</u> listing robbery as an enumerated

offense")(emphasis added).  The United States maintains that, pursuant to the holding in Johnson I, a conviction under New Mexico's robbery statute does not qualify as a violent felony for ACCA purposes, see MOO Response at 2, but the United States "nonetheless, continues to agree with the Court that New Mexico's robbery offense should count as a crime of violence under the sentencing guidelines based on the distinguishable grounds that it is an enumerated offense in the commentary," MOO Response at 3 (citing United States v. Madrid, 805 F.3d 1204, 1207 (10th Cir. 2015)).

In answer to the Court's specific questions in the MOO, the United States provides the following answers: (i) the United States will defend on appeal the Court's procedure to use the predicate convictions that Judge Conway and the USPO, at the time of sentencing, did not use, but will also stand by its concession that Garcia's prior conviction for robbery is not a violent felony for the ACCA's purposes; (ii) the United States' position is that the holding of Johnson I is retroactive and it will maintain this position on appeal; (iii) the United States' position is that New Mexico's robbery statute does not require Johnson I-level force and it will maintain this position on appeal; and (iv) the United States' position is that New Mexico's robbery statute is not a violent felony under the ACCA in light of Johnson I, which was issued after the United States Court of Appeals for the Tenth Circuit's decision in United States v. Lujan, 9 F.3d 890 (10th Cir. 1993), and it will maintain this position on appeal.  See MOO Response at 2-3.

### 2.    The PFRD.

In addition, pursuant to the MOO, Judge Martínez prepared her new PFRD considering Garcia's claims in his § 2255 Motion, notwithstanding the United States' concessions to those claims.  See PFRD at 1.  Judge Martínez first considered Garcia's claim that his conviction for possession of a deadly weapon by a prisoner can no longer be used as a conviction for a violent

felony under the ACCA, because it falls within the residual clause, which the Supreme Court held was unconstitutionally vague in Johnson II. See PFRD at 7-8 (addressing Motion at 1, 12-15). Judge Martínez explained that, under the ACCA, an individual who violates § 922(g), e.g., being a felon in possession of a firearm or ammunition, and who has "three previous convictions . . . for a violent felony or a serious drug offense," will receive a mandatory, minimum 15-year sentence. 18 U.S.C. § 924(e). The statute defines the term "violent felony" as:

> [A]ny crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that --
>
>> (i)  has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>>
>> (ii)  is burglary, arson, or extortion, involves use of explosive, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B)(i)-(ii) (emphasis added). The emphasized clause is the "residual clause," and, in Johnson II the Supreme Court held that the residual clause "denies fair notice to defendants and invites arbitrary enforcement by judges," and, therefore, violates the Constitution of the United States of America's Due Process Clause. Johnson II, 135 S. Ct. at 2557. Judge Martínez agreed with Garcia that his conviction for possession of a deadly weapon by a prisoner can no longer be used as a conviction for a violent felony under the ACCA, because that conviction falls within the residual clause, which the Supreme Court found to be unconstitutionally vague in Johnson II. See PFRD at 8. Judge Martínez further concluded that Garcia's conviction for possession of a deadly weapon by a prisoner does not fall under § 924(e)(2)(B)(i), or the "force clause," because it does not have "as an element the use, attempted use, or threatened use of physical force against the person of another," and is not one of the

enumerated offenses in § 924(e)(2)(B)(ii).  PFRD at 8.   Judge Martínez therefore concluded that, pursuant to the holding in <u>Johnson II</u>, this conviction can no longer be used to support a finding that Garcia is an armed career criminal.  <u>See</u> PFRD at 8.

Next, Judge Martínez considered whether, even without Garcia's conviction for possession of a deadly weapon by a prisoner, Garcia may still be subject to the ACCA based on his prior convictions for arson, burglary, and robbery.  <u>See</u> PFRD at 8-18.  Judge Martínez considered Garcia's argument that his conviction for robbery cannot be used as a predicate offense under any ACCA provision other than the residual clause, because Judge Conway did not consider the conviction as a predicate conviction at Garcia's sentencing.  <u>See</u> PFRD at 8-13 (considering Garcia's argument in the Motion at 16).  Judge Martínez concluded that it is not clear whether Judge Conway relied on Garcia's robbery conviction in his decision to apply the ACCA enhancement, noting that, while Garcia's PSR does not include his conviction for robbery as one of the three convictions used to trigger the ACCA enhancement, <u>see</u> PSR ¶ 24, at 10, the PSR nonetheless includes this conviction in Garcia's criminal history, <u>see</u> PSR ¶ 30, at 13.  <u>See also</u> PFRD at 9.  Judge Martínez further noted that Judge Conway, at sentencing, stated that Garcia was "a six-time convicted felon," Tr. at 6:5-6 (Conway),  that the United States' Notice included the robbery offense as one of the qualifying prior convictions, <u>see</u> Notice at 2, and that Garcia admitted in the Plea Agreement that he had previously been convicted of robbery, <u>see</u> Plea Agreement at 5.  <u>See also</u> PFRD at 9.

Judge Martínez concluded that, even if Judge Conway did not rely on Garcia's robbery conviction for the ACCA enhancement, the Court must vacate Garcia's sentence, because his prior conviction for possession of a weapon by a prisoner is no longer valid as an ACCA-enhancing conviction, and the Court, therefore, must resentence Garcia, at which point the Court

can rely on Defendant's robbery conviction.  See PFRD at 10.  Judge Martínez noted that Garcia

cites to no authority that says that a court must discuss all of a defendant's prior convictions for

an ACCA enhancement, instead of just the required three, or that, if a court fails to discuss all of

a defendant's convictions, it may not use those prior convictions at resentencing.  See PFRD at

10.  Judge Martínez concluded that Garcia's reliance on the case McCarthan v. Warden, FCI

Estill, 811 F.3d 1237, 1250 n.8 (11th Cir. 2016)("McCarthan"), does not support Garcia's

contention that his robbery conviction cannot now be used as a predicate offense under the

ACCA because the United States failed to object to the sentencing court's decision to rely on

convictions other than the robbery conviction for the ACCA enhancement.  See PFRD at 11-13

(considering Garcia's argument in the Motion at 16).   Judge Martínez explained that, in

McCarthan, the United States Court of Appeals for the Eleventh Circuit concluded that the

PSR's identification of the defendant's predicate convictions was sufficient to support an ACCA

enhancement, even though neither the PSR nor the sentencing court identified which of the prior

convictions are being used to support that enhancement.  See PFRD at 12 (citing McCarthan, 811

F.3d at 1253-54).  The Eleventh Circuit stated that

> [the defendant] did not object to the PSR's failure to identify which of his prior
> convictions justified an ACCA enhancement[,] [n]or did [the defendant] object to
> the sentencing court's adoption of the PSR, or its failure to identify specific prior
> convictions in support of its imposition of an ACCA enhancement[;] [o]n these
> facts, [the defendant] forfeited any objection to the sentencing court's failure to
> identify the specific convictions supporting his ACCA enhancement[;] [w]e must,
> therefore, assume that the district court relied on all of [the defendant's] ACCA-
> qualifying convictions in imposing [defendant's] ACCA enhancement.

McCarthan, 811 F.3d at 1253-54.  Judge Martínez noted that such a situation was similar to this

case's facts where, even though Garcia's PSR identifies which convictions were used for the

probation officer's ACCA finding and does not specifically include the robbery conviction as

one of those convictions, the PSR also includes Garcia's robbery conviction in the list of his

prior convictions in the criminal history section.  See PFRD at 12-13.  Judge Martínez further relied on Judge Conway's statement that Garcia had six prior convictions and that the United States had filed a Notice to seek an enhanced sentence under the ACCA which included Garcia's robbery conviction.  See PFRD at 13.  Judge Martínez, therefore, concluded that the facts in McCarthan can support a finding that Judge Conway relied on all of Garcia's ACCA-qualifying convictions in imposing his ACCA enhancement.  See PFRD at 13.

Second, Judge Martínez concluded that, even if the McCarthan statements can be used to support Garcia's contention that his robbery conviction cannot now be used as a predicate offense under the ACCA because the United States failed to object to Judge Conway's decision to rely on other convictions for the ACCA enhancement, McCarthan is not binding precedent on the Court, and, regardless, the Eleventh Circuit vacated the panel's decision when granting a rehearing en banc.  See PFRD at 13 (citing McCarthan v. Warden, FCI Estill, 2016 WL 3878151 (11th Cir. 2016)("[I]t is ORDERED that this case will be reheard en banc.  The panel's opinion is VACATED.")).  Judge Martínez, therefore, recommends rejecting Garcia's argument that his robbery conviction cannot be used to enhance his sentence under the ACCA because Judge Conway did not consider it as a predicate conviction at Garcia's sentencing.  See PFRD at 13.

Next, Judge Martínez considered Garcia's alternative argument that his robbery conviction cannot be used as a qualifying predicate offense under the ACCA, because it does not qualify under either of ACCA's non-residual clause categories of violent felonies.  See PFRD at 14-18 (considering Garcia's argument in the Motion at 16-24.  Judge Martínez first noted that Garcia's robbery conviction is not one of the enumerated offenses -- burglary, arson, or extortion -- in 18 U.S.C. § 924(e)(2)(B)(ii).  See PFRD at 14.  Judge Martínez then considered whether the robbery conviction satisfies the ACCA's force clause, which provides that a prior conviction is a

"violent felony" if it "has as an element the use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i).  PFRD at 14.  Judge Martínez noted that New Mexico's robbery statute states: "Robbery consists of the theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence."  N.M. Stat. Ann. § 30-16-2.  Judge Martínez applied the categorical approach, because the offense does not contain multiple elements listed in the alternative, and, therefore, looked only to the statutory definition of the offense and not to the particular facts underlying Garcia's conviction.  See PFRD at 14-15 (citing United States v. Lujan, 9 F.3d at 891-92, which applied the categorical approach to New Mexico's robbery statute).  Judge Martínez explained that, while in United States v. Lujan the Tenth Circuit held that New Mexico's robbery statute fit within ACCA's force clause, see 9 F.3d at 892, the Supreme Court in Johnson I clarified that the term "physical force" in § 924(e)(2)(B)(i) must be "strong physical force," "a substantial degree of force," or "violent force -- that is, force capable of causing physical pain or injury to another person."   Johnson I, 559 U.S. at 140 (emphasis omitted).  Judge Martínez concluded that, because New Mexico's robbery statute does not require "strong physical force," "a substantial degree of force," or "violent force -- that is, force capable of causing physical pain or injury to another person," it does not constitute "physical force" under § 924(e)(2)(B)(i).  PFRD at 15.  Judge Martínez therefore recommended denying the United States' initial argument to the contrary, see Response at 3-5, noting that the United States later conceded the issue, see Supplemental Memorandum at 1.[1]

_____

[1]Judge Martínez noted that the United States has made similar concessions in several cases in the District of New Mexico.  See PFRD at 19 (citing, e.g., United States v. Lamb, Nos. CR 10-1713 MCA, CIV 16-0627 MCA/SV; United States v. Tafoya, Nos. CR 10-3460 LH, CIV 16-0647 LH/CG; and United States v. Sanchez, Nos. CR 13-0961 JAP, CIV 16-0659 JAP/GBW).  The Court additionally notes that, since the date of entry of the PFRD, the

Judge Martínez next considered the United States' initial contention that Johnson I does not apply retroactively and, therefore, the Court must look at the law at the time of Garcia's sentencing.  See PFRD at 15-18 (citing Response at 2-3, and the Supplemental Memorandum, wherein the United States asks to withdraw the Response's argument, because "it has been learned subsequent to the filing of the [Response] that the department has advised against making such procedural arguments").  Judge Martínez noted that neither the Tenth Circuit nor the Supreme Court have held that Johnson I should apply retroactively.  See PFRD at 16.  Judge Martínez further explained that, because Garcia has successfully demonstrated constitutional error as to his sentence pursuant to the holding in Johnson II, he is entitled to resentencing, and the Tenth Circuit has held that courts shall apply current sentencing law at the time of resentencing, absent an ex post facto violation in which application of the new law to Garcia would disadvantage him.  See PFRD at 17 (citing United States v. Ziegler, 39 F.3d 1058, 1063-64, n.2 (10th Cir. 1994); United States v. Vogt, 106 F.3d 414, at *4 (10th Cir. 1997)).  In addition, Judge Martínez notes that, after the Supreme Court issued Johnson I, and before Johnson II, Garcia had no viable challenge to his robbery conviction, because Garcia's predicate

---

defendant in United States v. Tafoya has been resentenced, and in both United States v. Silva, Nos. CR 07-0787 JCH, CIV 16-0674 JCH/KK, and United States v. Raymond, Nos. CR 03-2066 MV, CIV 16-0634 MV/KBM, the United States conceded that New Mexico's third-degree robbery statute does not constitute a violent felony for ACCA purposes, and the defendants in those case have been resentenced.  In addition, the Magistrate Judge in United States v. King, Nos. CR 02-2092 MV, CIV 16-0501 MV/KK, has recently entered a Proposed Findings and Recommended Disposition on an opposed § 2255 motion finding that armed robbery under New Mexico's robbery statute is no longer a violent felony under the ACCA pursuant to the holding in Johnson I.  See United States v. King, No. CIV 16-0501, Proposed Findings and Recommended Disposition at 22, 25, filed December 12, 2016 (Doc. 12).  But see United States v. Contreras, Nos. CR 12- 2653 RB, CIV 16-0671 RB/SMV, Proposed Findings and Recommended Disposition, filed December 6, 2016 (Doc. 12)(finding that the defendant's conviction for third-degree robbery under New Mexico's robbery statute qualifies as a crime of violence under the force clause of U.S.S.G. § 4B1.2 and as enumerated in the commentary of § 4B1.2).

convictions for possession of a deadly weapon by a prisoner and robbery would still have been viable under the residual clause as his third ACCA conviction.  See PFRD at 18.  Judge Martínez thus concluded that <u>Johnson I</u> should be applied to Garcia's case upon resentencing.  See PFRD at 18.

Finally, Judge Martínez addressed the issue whether, at resentencing, Garcia's robbery conviction can be used to find that he is a career offender under the U.S.S.G.  See PFRD at 18-19.  Judge Martínez noted that, while neither party raised this issue, the Court's order for additional briefing and an amended PFRD was based on the United States' arguments in <u>Barela</u> whether New Mexico's robbery offense is a violent felony under the U.S.S.G., and that the Court had asked Judge Martínez to discuss this issue.  See PFRD at 18.  Judge Martínez stated that, because it appears that Garcia has already served the maximum sentence of ten years imprisonment for his conviction under § 922(g), the Court may not need to consider Garcia's robbery offense with regard to the U.S.S.G.  Id. at 19.  Nevertheless, the Magistrate Judge explained that Garcia's prior convictions for arson and robbery are "crimes of violence" under the U.S.S.G., because they are listed as enumerated offenses under § 4B1.2(a)(2), both in the accompanying commentary and, as of August 1, 2016, in the U.S.S.G.'s text.  PFRD at 19 n.4.  Therefore, Judge Martínez concluded that, to the extent the U.S.S.G. will apply at Garcia's resentencing, his robbery offense would be considered a crime of violence under the U.S.S.G.  See PFRD at 19.

**3.      <u>Garcia's Objections.</u>**

At the outset, the Court notes that Garcia has agreed with Judge Martínez' PFRD and her recommendation that it grant his Motion.  See Objections at 1.  Nevertheless, Garcia states that he "objects to certain findings the magistrate judge made in the course of reaching [her] ultimate

correct recommendation." Objections at 1. The Court, therefore, must consider each of Garcia's objections and conduct a de novo review of those portions of the PFRD to which Garcia objects. See 28 U.S.C. § 636(b)(1)(C). This de novo review implicates the PFRD's ultimate outcome, because the extent of the Objections implicates the analysis Judge Martínez used to reach her conclusions.

> **a.    Consideration of Garcia's Response and Objections to the Court's MOO.**

Garcia's first objection is that the Court should consider Garcia's response and objections filed in response to the MOO directing the United States to answer questions and Judge Martínez to produce an amended PFRD without consideration of the United States' concessions. See Objections at 3-4 (citing Mr. Garcia's Response and Objections to District Court's Memorandum Opinion and Order, filed October 14, 2016 (Doc. 27)("MOO Objections")).[2] After the Court entered its MOO on September 28, 2016, Garcia addressed a Letter to the Court, filed October 2, 2016 (Doc. 24)("Letter"), and a document called Mr. Garcia's Objections to Memorandum and Order, filed October 7, 2016 (Doc. 26)("Unsigned Objections"), neither of which Garcia's counsel signed. Then, on October 14, 2016, Garcia's counsel filed Garcia's MOO Objections, which also objected to the Court's MOO. According to the Objections, Judge Martínez erred by not relying on Garcia's documents filed in response to the MOO. See Objections at 3-4. Garcia thus seems to request that the Court incorporate Garcia's arguments in those filings that "*Johnson I* would apply at a new sentencing . . . [and] *Lujan* is not applicable to this case." Objections at 3-4. The Court, at the outset, notes that it specifically directed Judge Martínez to "produce another PFRD that ignores the [United States'] concessions and analyzes all issues [in

---

[2]While the United States cites to the document numbers in Garcia's criminal case, the Court will cite to the document numbers in the civil case to be consistent with other documents and orders filed in these cases.

- 17 -

Garcia's § 2255 Motion] independently," MOO at 5, which did not encompass any new claims or additional support that Garcia presented in response to the Barela MOO.

### b.    The United States' Waiver of Reliance on Garcia's Robbery Conviction.

Next, Garcia contends that he "has demonstrated the government waived reliance on [Garcia's] conviction to establish his ACCA eligibility" and that Judge Martínez erred by discounting the waiver principles discussed in McCarthan on the ground that McCarthan was vacated.  Objections at 4.  Garcia therefore contends that "the vacating of *McCarthan* does not undermine the conclusion that the government's failure to object to the PSR's and the district court's omission of the robbery conviction as an ACCA predicate waived [the government's] reliance on that conviction as an ACCA predicate now."  MOO Objections at 5.  Garcia further contends that, "[i]n any event, given the government's concession that [Garcia's] robbery conviction is not a valid ACCA predicate, it has certainly now waived its reliance on that conviction."  Objections at 5.

### c.    Garcia's Failure to Object to the Inclusion of His Robbery Conviction.

Garcia next contends that he did not forfeit his challenge to the inclusion of his robbery conviction as an ACCA predicate by failing to object to Judge Conway's failure to include that conviction as an ACCA predicate at sentencing.  See Objections at 5-6.  Garcia contends that it was not his obligation to draw Judge Conway's attention to any error regarding the use of his robbery conviction as an ACCA-predicate conviction and that, instead, it was the United States' responsibility to object.  See Objections at 5.  Garcia states that the facts in McCarthan are different, because the PSR there did not specify which convictions were ACCA predicates, so the defendant there forfeited an objection to the use of any particular conviction as an ACCA

predicate, because he did not challenge the failure to list the convictions that rendered him ACCA eligible.  See Objections at 6.  Here, however, Garcia contends that, because the PSR specified three convictions as ACCA predicate offense, not including the robbery conviction, Garcia had no obligation to object to the PSR, because he knew Judge Conway would rely upon the three specified convictions to impose the ACCA sentence.  See Objections at 5-6.

### d.       Judge Conway's Reliance on Garcia's Robbery Conviction.

Next, Garcia contends that Judge Conway "definitely did not rely on [Garcia's] robbery conviction to justify [Garcia's] ACCA sentence."  Objections at 6.  Garcia contends that Judge Martínez erred in concluding that it is not clear whether Judge Conway relied on Garcia's robbery conviction as an ACCA predicate and that "[t]he record is very clear that this court did not do so."  Objections at 6.  Garcia notes that the PSR listed three convictions as ACCA predicates, but did not list the robbery conviction, that the United States did not object to its absence, and that Judge Conway did not mention the United States' Notice that it intended to rely on Garcia's robbery conviction for an ACCA enhancement.  See Objections at 6.

### e.       Whether Garcia is Entitled to Resentencing Under Current Law.

Garcia states that he agrees with Judge Martínez that Garcia shall be resentenced pursuant to the law in effect at the time of resentencing.  See Objections at 9-10.  Garcia, however, further argues:

> Thus, if this Court decides the government has not waived submission of the robbery conviction as an ACCA predicate, this court must apply [Johnson I] to determine whether New Mexico's third-degree robbery statute is a violent felony. Another reason to do so is because [Johnson I] is retroactive in any case.  The magistrate judge does not mention that point.  But it is an alternative obvious way to reach the same ultimate result and this court expressed concern about the issue.

Objections at 11.

       **f.**      **Whether Robbery Requires Enough Force to Satisfy the Force Clause.**

Garcia contends that, while Judge Martínez correctly concludes that New Mexico's third-degree robbery offense does not require sufficient use of force to satisfy the "physical force" clause of § 924(e)(2)(B)(i), Judge Martínez does not explain why New Mexico's third-degree robbery offense does not meet that requirement, and Garcia thus asks the Court to consider his arguments in favor of this conclusion.  <u>See</u> Objections at 12-15 (citing to New Mexico cases which explain that, to constitute robbery, the force necessary must only be enough to overcome the "resistance of attachment").

       **g.**      **Consideration of** United States v. Lujan.

Next, Garcia states that he agrees with Judge Martínez that <u>Johnson I</u> trumps the Tenth Circuit's decision in <u>United States v. Lujan</u>, but asks the Court to "consider the more expansive arguments [Garcia] has made demonstrating that this court may not apply Lujan to his case."  Objections at 16.  Garcia argues that the Tenth Circuit in <u>United States v. Lujan</u> did not discuss whether New Mexico robbery requires a particular level of force, <u>see</u> Objections at 16-18, and that <u>United States v. Lujan</u> is not binding on this Court to the extent that it is inconsistent with the <u>Johnson I</u> decision, <u>see</u> Objections at 18-21.

       **h.**      **Application of the U.S.S.G.**

Finally, Garcia objects to Judge Martínez' findings and conclusions regarding Garcia's U.S.S.G. calculations.  <u>See</u> Objections at 21-23.  Garcia contends that, even though he has already served the ten-year maximum sentence the law allows, the Court will still need to make U.S.S.G. calculations.  <u>See</u> Objections at 21.  Garcia further contends that he is not a career offender under § 4.B1.1(a) of the U.S.S.G., because he was convicted of being a felon in possession of a firearm, and not of a crime of violence or a controlled substance offense.  <u>See</u>

Objections at 21.  Garcia states that the "crime of violence" definition in § 4B1.2 is relevant, however, under U.S.S.G. § 2K2.1 for his offense level calculation and that robbery is not a valid ground for an offense-level enhancement, because it was only listed as an enumerated offense in the commentary, and not in the guideline, at the time of Garcia's offense.  See Objections at 21-23.  Garcia states that he will, nonetheless, address the question of his appropriate offense level at his resentencing.  See Objections at 23.

## LAW REGARDING OBJECTIONS TO PROPOSED FINDINGS AND RECOMMENDATIONS

District courts may refer dispositive motions to a Magistrate Judge for a recommended disposition.  See Fed. R. Civ. P. 72(b)(1) ("A magistrate judge must promptly conduct the required proceedings when assigned, without parties' consent, to hear a pretrial matter dispositive of a claim or defense . . . .").  Rule 72(b)(2) governs objections: "Within 10 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."  Finally, when resolving objections to a Magistrate Judge's proposal, "the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

Similarly, 28 U.S.C. § 636 provides:

A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1)(C).

"The filing of objections to the magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute." United States v. One Parcel of Real Property, With Buildings, Appurtenances, Improvements, and Contents, 73 F.3d 1057, 1059 (10th Cir. 1996)("One Parcel")(quoting Thomas v. Arn, 474 U.S. 140, 147 (1985)).  As the Tenth Circuit has noted, "the filing of objections advances the interests that underlie the Magistrate's Act,[3] including judicial efficiency."  One Parcel, 73 F.3d at 1059 (citing Niehaus v. Kansas Bar Ass'n, 793 F.2d 1159, 1165 (10th Cir. 1986); United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981)).

The Tenth Circuit held in One Parcel "that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  One Parcel, 73 F.3d at 1060.  "To further advance the policies behind the Magistrate's Act, [the Tenth Circuit], like numerous other circuits, ha[s] adopted 'a firm waiver rule' that 'provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions.'"  One Parcel, 73 F.3d at 1059 (citations omitted).  In addition to requiring specificity in objections, the Tenth Circuit has stated that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."  Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996).  See United States v. Garfinkle, 261 F.3d 1030, 1030-31 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.").  And, in an unpublished opinion, the Tenth Circuit stated that "the district court correctly held that [a petitioner] had waived [an] argument

_____

[3]28 U.S.C. §§ 631-39.

by failing to raise it before the magistrate." Pevehouse v. Scibana, 229 F. App'x 795, 796 (10th

Cir. 2007)(unpublished).[4]

In One Parcel, the Tenth Circuit, in accord with other Courts of Appeals, expanded the

waiver rule to cover objections that are timely but too general. See One Parcel, 73 F.3d at 1060.

The Supreme Court of the United States -- in the course of approving the United States Court of

Appeals for the Sixth Circuit's use of the waiver rule -- has noted:

> It does not appear that Congress intended to require district court review of a
> magistrate's factual or legal conclusions, under a *de novo* or any other standard,
> when neither party objects to those findings. The House and Senate Reports
> accompanying the 1976 amendments do not expressly consider what sort of
> review the district court should perform when no party objects to the magistrate's
> report. See S. Rep. No. 94-625, pp. 9-10 (1976) (hereafter Senate Report); H.R.
> Rep. No. 94-1609, p. 11 (1976); U.S. Code Cong. & Admin. News 1976, p. 6162
> (hereafter House Report). There is nothing in those Reports, however, that
> demonstrates an intent to require the district court to give any more consideration
> to the magistrate judge's report than the court considers appropriate. Moreover,
> the Subcommittee that drafted and held hearing on the 1976 amendments had
> before it the guidelines of the Administrative Office of the United States Courts
> concerning the efficient use of magistrates. Those guidelines recommended to the
> district courts that "[w]here a magistrate makes a finding or ruling on a motion or
> an issue, his determination should become that of the district court, unless specific
> objection is filed within a reasonable time." See Jurisdiction of the United States
> Magistrates, Hearings on S. 1283 before the Subcommittee on Improvements in
> Judicial Machinery of the Senate Committee on the Judiciary, 94th Cong., 1st

---

[4]Pevehouse v. Scibana is an unpublished opinion, but the Court can rely on an
unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See
10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their
persuasive value."). The Tenth Circuit has stated:

> In this Circuit, unpublished orders are not binding precedent, . . . and we have
> generally determined that citation to unpublished opinions is not favored.
> However, if an unpublished opinion or order and judgment has persuasive value
> with respect to a material issue in a case and would assist the court in its
> disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted). The Court
concludes that Pevehouse v. Scibana has persuasive value with respect to a material issue, and
will assist the Court in its disposition of this Memorandum Opinion and Order.

Sess., 24 (1975) (emphasis added) (hereafter Senate Hearings).  The Committee also heard Judge Metzner of the Southern District of New York, the chairman of a Judicial Conference Committee on the administration of the magistrate system, testify that he personally followed that practice.  See id., at 11 ("If any objections come in, . . . I review [the record] and decide it. If no objections come in, I merely sign the magistrate's order.").  The Judicial Conference of the United States, which supported the de novo standard of review eventually incorporated in § 636(b)(1)(C), opined that in most instances no party would object to the magistrate's recommendation, and the litigation would terminate with the judge's adoption of the magistrate's report.  See Senate Hearings, at 35, 37.  Congress apparently assumed, therefore, that any party who was dissatisfied for any reason with the magistrate's report would file objections, and those objections would trigger district court review.  There is no indication that Congress, in enacting § 636(b)(1)(C), intended to require a district judge to review a magistrate's report to which no objections are filed.  It did not preclude treating the failure to object as a procedural default, waiving the right to further consideration of any sort.  We thus find nothing in the statute or the legislative history that convinces us that Congress intended to forbid a rule such as the one adopted by the Sixth Circuit.

Thomas v. Arn, 474 U.S. at 150-52 (emphasis in original)(footnotes omitted).

The Tenth Circuit also noted, "however, that '[t]he waiver rule as a procedural bar need not be applied when the interests of justice so dictate.'"  One Parcel, 73 F.3d at 1060 (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)("We join those circuits that have declined to apply the waiver rule to a pro se litigant's failure to object when the magistrate's order does not apprise the pro se litigant of the consequences of a failure to object to findings and recommendations.")(citations omitted).  Cf. Thomas v. Arn, 474 U.S. at 154 (noting that, while "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask," a failure to object "does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard").  In One Parcel, the Tenth Circuit noted that the district judge had decided sua sponte to conduct a de novo review despite the lack of specificity in the objections, but the Tenth Circuit held that it would deem the issues waived on appeal because it would advance the interests underlying the waiver rule.  See 73 F.3d at 1060-61 (citing cases from other Courts of Appeals where district courts elected to address

merits despite potential application of waiver rule, but the Courts of Appeals opted to enforce waiver rule).

Where a party files timely and specific objections to the Magistrate Judge's proposed findings and recommendations, "on [] dispositive motions, the statute calls for a *de novo* determination, not a *de novo* hearing." United States v. Raddatz, 447 U.S. 667, 674 (1980). "[I]n providing for a '*de novo* determination' rather than a *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." United States v. Raddatz, 447 U.S. at 676 (quoting 28 U.S.C. § 636(b); citing Mathews v. Weber, 423 U.S. 261, 275 (1976)). The Tenth Circuit requires a "district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation" when conducting a de novo review of a party's timely, specific objections to the magistrate's report. In re Griego, 64 F.3d 580, 583-84 (10th Cir. 1995). "When objections are made to the magistrate's factual findings based on conflicting testimony or evidence . . . . the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing." Gee v. Estes, 829 F.2d 1005, 1008-09 (10th Cir. 1987).

A district court must "clearly indicate that it is conducting a de novo determination" when a party objects to the Magistrate Judge's report "based upon conflicting evidence or testimony." Gee v. Estes, 829 F.2d at 1009. On the other hand, a district court fails to meet the requirements of 28 U.S.C. § 636(b)(1) when it indicates that it gave "considerable deference to the magistrate's order." Ocelot Oil Corp. v. Sparro Indus., 847 F.2d 1458, 1464 (10th Cir. 1988). A district court need not, however, "make any specific findings; the district court must merely conduct a *de novo* review of the record." Garcia v. City of Albuquerque, 232 F.3d 760,

766 (10th Cir. 2000).  "[T]he district court is presumed to know that de novo review is required.

. . .  Consequently, a brief order expressly stating the court conducted de novo review is

sufficient."  Northington v. Marin, 102 F.3d 1564, 1570 (10th Cir. 1996)(citing In re Griego, 64

F.3d at 583-84).  "[E]xpress references to de novo review in its order must be taken to mean it

properly considered the pertinent portions of the record, absent some clear indication otherwise."

Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d 722, 724 (10th Cir. 1993).  The Tenth

Circuit has previously held that a district court properly conducted a de novo review of a party's

evidentiary objections when the district court's "terse" order contained one sentence for each of

the party's "substantive claims" and did "not mention his procedural challenges to the

jurisdiction of the magistrate to hear the motion."  Garcia v. City of Albuquerque, 232 F.3d at

766.  The Tenth Circuit has explained that brief district court orders that "merely repeat the

language of § 636(b)(1) to indicate its compliance" are sufficient to demonstrate that the district

court conducted a de novo review:

> It is common practice among district judges in this circuit to make such a
> statement and adopt the magistrate judges' recommended dispositions when they
> find that magistrate judges have dealt with the issues fully and accurately and that
> they could add little of value to that analysis. We cannot interpret the district
> court's statement as establishing that it failed to perform the required de novo
> review.

In re Griego, 64 F.3d at 584.

Notably, because a district court may place whatever reliance it chooses on a Magistrate

Judge's proposed findings and recommendations, a district court "may accept, reject, or modify,

in whole or in part, the findings or recommendations made by the magistrate," 28 U.S.C. §

636(b)(1), as "Congress intended to permit whatever reliance a district judge, in the exercise of

sound judicial discretion, chose to place on a magistrate's proposed findings and

recommendations," United States v. Raddatz, 447 U.S. at 676 (emphasis omitted).  See Bratcher

v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d at 724-25 (holding that the district court's adoption of the Magistrate Judge's "particular reasonable-hour estimates" is consistent with the de novo determination that 28 U.S.C. § 636(b)(1) and United States v. Raddatz require).

Where no party objects to the Magistrate Judge's proposed findings and recommended disposition, the Court has, as a matter of course in the past and in the interests of justice, reviewed the Magistrate Judge's recommendations.  In Pablo v. Soc. Sec. Admin., 2013 WL 1010401 (D.N.M. 2013)(Browning, J.), the plaintiff failed to respond to the Magistrate Judge's proposed findings and recommended disposition, and thus waived his right to appeal the recommendations, but the Court nevertheless conducted a review.  The Court generally does not, however, "review the PF&RD de novo, because the parties had not objected thereto, but rather review[s] the recommendations to determine whether they clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion."  Pablo v. Soc. Sec. Admin., 2013 WL 1010401, at *4. The Court, thus, does not determine independently what it would do if the issues had come before the Court first, but rather adopts the proposed findings and recommended disposition where "[t]he Court cannot say that the Magistrate Judge's recommendation . . . is clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion."  Pablo v. Soc. Sec. Admin., 2013 WL 1010401, at *4.  See Alexandre v. Astrue, 2013 WL 1010439, at *4 (D.N.M. 2013)(Browning, J.)("The Court rather reviewed the findings and recommendations of the Honorable Stephan M. Vidmar, United States Magistrate Judge, to determine if they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.  The Court determines that they are not, and will therefore adopt the PFRD."); Trujillo v. Soc. Sec. Admin., 2013 WL 1009050, at *5 (D.N.M. 2013)(Browning, J.)(adopting the proposed findings and conclusions, noting: "The Court did not review the ARD de novo, because Trujillo has not objected to it, but

rather reviewed the . . . findings and recommendations to determine if they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion, which they are not.").  This review, which is deferential to the Magistrate Judge's work when there is no objection, nonetheless provides some review in the interest of justice, and seems more consistent with the waiver rule's intent than no review at all or a full-fledged review.  Accordingly, the Court considers this standard of review appropriate.  See Thomas v. Arn, 474 U.S. at 151 ("There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate.").  The Court is reluctant to have no review at all if its name is going at the bottom of the order adopting the Magistrate Judge's proposed findings and recommendations.

## LAW REGARDING 28 U.S.C. § 2255 PETITIONS

A court must conduct a hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  See United States v. Lopez, 100 F.3d 113, 119 (10th Cir. 1996).  Under this standard, "the petitioner bears the burden of 'alleging facts which, if proved, would entitle him to relief.'" Hatch v. Oklahoma, 58 F.3d 1447, 1457 (10th Cir. 1995)(quotation and citations omitted), overruled on other grounds by Daniels v. United States, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001)(en banc).  Accordingly, if the prisoner alleges facts, which, if believed, cannot be grounds for relief, there is no need for a hearing.  See Hatch v. Oklahoma, 58 F.3d at 1457.  Additionally, the petitioner's "allegations must be specific and particularized; conclusory allegations will not suffice to warrant a hearing."  Hatch v. Oklahoma, 58 F.3d at 1457 (quotation, citations, and internal punctuation omitted).  If the claims relate to occurrences in the courtroom or evidence in the record, then the Court need not conduct a hearing.  See Machibroda v. United States, 368

U.S. 487, 494-95 (1962).

## LAW REGARDING THE ACCA

Congress designed the ACCA to address the "special danger" that career offenders carrying guns pose.  Begay v. United States, 553 U.S. 137, 146 (2008).  The ACCA imposes a minimum fifteen-year sentence for individuals who violate 18 U.S.C. § 922(g),[5] and have "three previous convictions . . . for a violent felony or serious drug offense, or both, committed on occasions different from one another."  18 U.S.C. § 924(e)(1).  See United States v. Sprous, 2010 U.S. App. LEXIS 15689, at *4 (10th Cir. 2010)(stating that, "[u]nder the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), a defendant who violates 18 U.S.C. § 922(g) and has 'three previous convictions . . . for a violent felony' is subject to a 15-year minimum sentence").

Whether a prior offense is a violent felony under the ACCA is a question of law.  See Johnson I, 559 U.S. at 134-35; United States v. Martinez, 602 F.3d 1166, 1168 (10th Cir. 2010).  The ACCA defines "violent felony" as

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that --
>
> > (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> >
> > (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(2)(B).  The ACCA formerly defined three classes of crimes that constitute violent felonies: (i) crimes that have as an element "the use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(I); (ii) burglary, arson,

---

[5]18 U.S.C. § 922(g) prohibits certain individuals, including convicted felons, from transporting or possessing firearms.

extortion, or crimes involving the use of explosives, see 18 U.S.C. § 924(e)(2)(B)(ii); and (iii) crimes not within the first two categories which involve "conduct that presents a serious risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii).  In Johnson II, the Supreme Court held that ACCA's provision making a "violent felony" any offense criminalizing "conduct that presents a serious risk of physical injury to another," called the Residual Clause, is impermissibly vague and that imposing an increased sentence under the Residual Clause thereby violates the Constitution's guarantee of due process.  Johnson II, 135 S. Ct. at 2562-63.  Still remaining, however, is § 924(e)(2)(B)(i), which defines "violent felony" to mean a crime that "has as an element the use, attempted use, or threatened use of physical force," commonly referred to as the "element" or "force" clause, and the "enumerated" clause, embodying § 924(e)(2)(B)(ii)'s language which lists the crimes of burglary, arson, extortion, or the use of explosives as violent felonies.  The Supreme Court expressly stated that its holding with respect to the Residual Clause does not call into question ACCA's application to the four enumerated offenses or to the remainder of the definition of a violent felony in § 924(e)(2)(B).  See 135 S. Ct. at 2563.  Johnson II, therefore, has no application to sentences enhanced under § 924(e)(2)(B)(i)'s force or element clause, or § 924(e)(2)(B)(ii)'s enumerated clause.

### 1. Use, Attempted Use, or Threatened Use of Physical Force.

A crime is a violent felony if it is punishable by imprisonment for more than a year, and "has as an element the use, attempted use, or threatened use of physical force against the person of another."  18 U.S.C. § 924(e)(2)(B)(I).

> Although the ACCA does not define "physical force," Black's Law Dictionary defines "force" as "[p]ower, violence, or pressure directed against a person or thing," and "physical force" as "[f]orce consisting in a physical act."  Black's Law Dictionary (8th Ed. 2004).  Section 924(e)(2)(B)(I), moreover, includes not only the actual or attempted use of physical force against the person of another, but also the threatened use of such force.

United States v. Hernandez, 568 F.3d 827, 830 (10th Cir. 2009)(footnote omitted).  See United States v. Herron, 432 F.3d 1127, 1137 (10th Cir. 2005)(stating that the defendant's convictions for having "knowingly place[d] or attempt[ed] to place another person in fear of imminent serious bodily injury . . . by the use of a deadly weapon" constituted violent felonies, because this "conduct easily satisfies the requirement of 'the threatened use of physical force against the person of another'").

In determining whether a conviction is for a violent felony under § 924(e)(2)(B)(I), the court applies a "categorical approach" under which the court looks "only to the fact of conviction and the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction."  United States v. Scoville, 561 F.3d 1174, 1176 (10th Cir. 2009)(citation omitted).  See United States v. Silva, 608 F.3d 663, 668 (10th Cir. 2010)(applying a categorical approach to determine whether a prior conviction qualifies as a violent felony under § 924(e)(2)(B)(I)).  All that is relevant is "'whether the elements of the offense are of the type that would justify its inclusion' within the ACCA"; the court does not "'inquir[e] into the specific conduct of this particular offender.'"  United States v. Scoville, 561 F.3d at 1176 (quoting James v. United States, 550 U.S. 192, 202 (2007)).  See Begay v. United States, 553 U.S. at 141 ("In determining whether this crime is a violent felony, we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion."); Taylor v. United States, 495 U.S. 575, 602 (1990); United States v. Hernandez, 568 F.3d at 829.

> In determining whether a conviction obtained under this statute is a "violent felony" within the meaning of § 4B1.2(a), we apply a formal categorical approach looking only to the statutory definitions of the prior offense, and not to the particular facts underlying those convictions.

> Applying this approach, it is clear a violation of Wyo. Stat. Ann. §
> 7-18-112 is not a violent felony within the meaning of the guideline because . . . it
> is a crime of inaction and does not "involve[ ] conduct that presents a serious
> potential risk of physical injury to another."

United States v. Pappan, 315 F. App'x 677, 682 (10th Cir. 2009)(citations and footnotes omitted).

If a criminal statute proscribes both conduct that falls within the definition of violent felony and conduct that falls outside of it, the court uses a "modified categorical approach," under which the court may also look at the charging documents and the documents of conviction to determine whether the defendant was convicted of a violent felony. United States v. Scoville, 561 F.3d at 1176. See United States v. Avalos, 315 F. App'x 731, 732 (10th Cir. 2009)("[W]e employ the so-called 'modified categorical approach' when the statute of conviction encompasses both violent and nonviolent crimes."). The Tenth Circuit clarified the proper use of the modified categorical approach in United States v. Herrera, stating: "[The modified categorical approach] is properly used when the underlying statute of conviction contains multiple element sets and is therefore divisible." 286 F. App'x 546, 552 (10th Cir. 2008). See United States v. Silva, 608 F.3d at 668 (stating that the modified categorical approach involves consulting "charging documents and documents of conviction")(citing United States v. Hernandez, 568 F.3d at 829). In United States v. Hernandez, the Tenth Circuit analyzed whether Texas' crime of deadly conduct[6] is a violent felony under the ACCA's § 924(e)(2)(B)(I).

---

[6]Texas law defines the crime of deadly conduct, in pertinent part, as:

(a) A person commits an offense if he recklessly engages in conduct that places another in imminent danger of serious bodily injury.

(b) A person commits an offense if he knowingly discharges a firearm at or in the direction of:

Because the defendant argued the Texas crime of deadly conduct was too broad to categorically constitute a violent felony, the Tenth Circuit applied a modified categorical approach, looking to the charging documents and documents of conviction to uncover the allegation that the defendant "knowingly discharged a firearm in the direction of an individual."  United States v. Hernandez, 568 F.3d at 829-30.  The Tenth Circuit concluded that Hernandez' conduct had as an element "the use, attempted use, or threatened use of physical force against another person," and held that the charged crime was a "violent felony" under the ACCA's § 924(e)(2)(B)(I).  United States v. Hernandez, 568 F.3d at 830.

In Johnson I, the Supreme Court analyzed whether a defendant's prior battery conviction under Florida law was a "violent felony" under the ACCA.  See Johnson I, 559 U.S. at 135-45.  Specifically, the Supreme Court inquired whether actually and intentionally touching another person constitutes the use of "physical force" within § 924(e)(2)(B)(I)'s meaning.  559 U.S. at 135-45.  The Supreme Court noted that the ACCA does not define "physical force" and "therefore [gave] the phrase it's ordinary meaning," holding that the term physical force "means violent force -- i.e., force capable of causing physical pain or injury to another person."  559 U.S.

---

(1) one or more individuals; or

(2) a habitation, building, or vehicle and is reckless as to whether the habitation, building, vehicle is occupied.

(c) Recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded.

. . . .

(e) An offense under Subsection (a) is a Class A misdemeanor. An offense under Subsection (b) is a felony of the third degree.

Tex. Penal Code Ann. § 22.05.

at 140 (emphasis in original).

In United States v. Herron, the Tenth Circuit held that Colorado's menacing statute[7] constituted a violent felony under use of force prong, and that "threatening or engaging in menacing conduct with a deadly weapon," such that a victim believes he or she is in danger of receiving an immediate battery, has as an element the threatened use of physical force against another person.  United States v. Herron, 432 F.3d 1127, 1138 (10th Cir. 2005), cert. denied, 547 U.S. 1104 (2006).  The defendant argued that menacing was not a "violent felony," because the term deadly weapon[8] was defined so broadly as to include a fist, foot, or whiskey bottle, meaning that menacing includes conduct such as telling someone over the telephone that you are going to

---

[7] Colorado defines menacing as:

A person commits the crime of menacing if, by any threat or physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury.  Menacing is a class 3 misdemeanor, but, it is a class 5 felony if committed:

   (a) By the use of a deadly weapon or any article used or fashioned in a manner to cause a person to reasonably believe that the article is a deadly weapon; or

   (b) By the person representing verbally or otherwise that he or she is armed with a deadly weapon.

C.R.S.A. § 18-3-206 (2000).

[8] Colorado defines a deadly weapon as:

"Deadly weapon" means any of the following which in the manner it is used or intended to be used is capable of producing death or serious bodily injury: (I) A firearm, whether loaded or unloaded; (II) A knife; (III) A bludgeon; or (IV) Any other weapon, device, instrument, material, or substance, whether animate or inanimate.

C.R.S.A. § 18-1-901(3)(e) (1999).  New Mexico's aggravated assault statute does not define "deadly weapon."  The New Mexico Criminal Code's uniform definition defines "deadly weapon" as "any firearm, whether loaded or unloaded; or any weapon which is capable of producing death or great bodily harm . . . or any other weapons with which dangerous wounds can be inflicted."  N.M.S.A. 1978, § 30-1-12B (1963).

punch or kick them.  432 F.3d at 1138.  The Tenth Circuit stated: "Knowingly placing someone in fear . . . by the use of a deadly weapon certainly constitutes threatening someone," and "[a] threat to kick or strike someone comes within the ACCA definition regardless of whether a foot or bottle is a deadly weapon."  432 F.3d at 1138.

In <u>United States v. Silva</u>, the Tenth Circuit concluded that "'apprehension causing' aggravated assault . . . creates a commensurate threat of physical force" and likened said conviction to convictions under statutes that "criminalized intentional physical contact with a deadly weapon."  608 F.3d at 672.  The Tenth Circuit noted that the guideline provision defines "'crime of violence' as 'any of the following: . . . aggravated assault, . . . or any offense . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another.'"  608 F.3d at 671 (quoting then-effective U.S.S.G § 2L1.2 app. N.1(B)(iii)).  <u>But</u> <u>see</u> <u>United States v. McFalls</u>, 592 F.3d 707, 716 (6th Cir. 2010)(noting that, although comment 1 to U.S.S.G § 4B1.2 lists "aggravated assault" as a crime of violence, South Carolina's crime of assault and battery of a high and aggravated nature was not categorically a crime of violence because it did not involve the same elements as generic aggravated assault).

## 2. <u>Enumerated Offenses</u>.

In <u>Taylor v. United States</u>, 495 U.S. at 575, the case in which the Supreme Court endorsed the "categorical approach," the question was whether the word "burglary" -- one of the ACCA's enumerated offenses -- required a "uniform definition independent of the labels employed by the various States' criminal codes." 495 U.S. at 592.  The Supreme Court held that an offense constitutes "burglary" under § 924(e) if, regardless of its exact definition, it has the basic elements of a "generic" burglary -- i.e., an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime -- or if the charging

paper and jury instructions required the jury to find all the elements of generic burglary to convict the defendant.  495 U.S. at 599.  The Supreme Court concluded that Congress used the word "burglary" in "the generic sense in which the term is now used in the criminal codes of most States."   495 U.S. at 589, 598 ("It seems to us implausible that Congress intended the meaning of 'burglary' for purposes of § 924(e) to depend on the definition adopted by the State of conviction.").  The Supreme Court explained:

> The convicting State's definition of "burglary" cannot control the word's meaning under § 924(e), since that would allow sentence enhancement for identical conduct in different States to turn upon whether the particular States happened to call the conduct "burglary."  That result is not required by § 924(e)'s omission of a "burglary" definition contained in a prior version of the statute absent a clear indication that Congress intended by the deletion to abandon its general approach of using uniform categorical definitions for predicate offenses. "Burglary" in § 924(e) must have some uniform definition independent of the labels used by the various States' criminal codes.

Taylor v. United States, 495 U.S. at 575.  See United States v. Silva, 608 F.3d at 666 (applying the modified categorical approach "to determine 'the character of [Silva's] admitted burglary'")(citation omitted);  United States v. Terrell, 593 F.3d 1084, 1091 (9th Cir. 2010)(applying the categorical and modified categorical approaches "to compare [the defendant's] prior burglary offenses to the 'generic' definition of burglary set forth in Taylor");  United States v. Juarez-Galvan, 572 F.3d 1156, 1159 (10th Cir. 2009)(stating that it "must consider 'the uniform generic definition[s]' of [kidnaping and robbery, enumerated in § 2L1.2], and then determine whether the state statute[s] correspond[] to that generic definition").

## ANALYSIS

Garcia's Objections have alerted the Court to a variety of legal issues underlying the PFRD's conclusions.  In light of Garcia's Objections, and in light of the Court's de novo review of the PFRD, the Court will overrule the Objections and not adopt the PFRD.  See 28 U.S.C. § 636(b)(1)(C).  There is no dispute that one of the three convictions in the ACCA section of

Garcia's PSR explicitly lists -- and upon which Judge Conway generally relied -- could only constitute a predicate felony for ACCA's purposes pursuant to ACCA's Residual Clause. <u>See</u> PSR at 10 (listing, as a predicate felony, Garcia's conviction for Possession of a Deadly Weapon By a Prisoner, a conviction the United States concedes fails under <u>Johnson II</u>, <u>see</u> Response at 2); Because, after <u>Johnson II</u> and <u>Welch v. United States</u>, ___ U.S. ___, 136 S. Ct. 1257, 1268 (2016)(holding that <u>Johnson II</u> applies retroactively to cases on collateral review), Garcia's ACCA enhancement cannot be predicated upon felonies pursuant to the Residual Clause, Garcia's sentence -- absent any other factors -- is thus the result of constitutional error, entitling him to relief under § 2255. Yet, Garcia's PSR also details his lengthy criminal history, and, albeit not listed in the PSR's ACCA section, includes Garcia's conviction for New Mexico robbery. The Court, consequently, must decide whether (i) the New Mexico robbery conviction -- which the PSR's criminal history section references, is one of the six convictions that Judge Conway referenced at the sentencing hearing, and is one to which Garcia admitted in the Plea Agreement -- can serve as a predicate conviction under the ACCA, and (ii), whether the Court must still vacate Garcia's sentence, if it is a qualifying felony, only to then resentence him again applying the same ACCA enhancement, or if instead the Court can conduct "harmless error" analysis, <u>see</u> <u>United States v. Hicks</u>, 2016 WL 5672949, at *3 (N.D. Cal. 2016)(Chen, J.). Courts have split whether, under § 2255, a <u>Johnson II</u> error is subject to harmless error review. Nonetheless, a majority view has indeed crystallized in favor of subjecting such error to harmless error review, and the Court agrees with the majority. Thus, the Court will subject Judge Conway's sentencing order to a harmless error review, therefore requiring the Court -- by this Memorandum Opinion and Order -- to consider whether New Mexico's robbery offense can qualify as a predicate felony for ACCA's purposes. Concluding that it does, the Court will

overrule Garcia's Objections and not adopt Judge Martínez' PFRD, substituting its own opinion in the PFRD's stead.   The Court proceeds by addressing Garcia's relevant Objections, substituting its own analysis for Judge Martínez' where appropriate.

## I.     JOHNSON II'S IMPORT, AND ACCA IN ITS AFTERMATH.

As discussed, under the ACCA, a felon convicted of possessing a firearm in violation of 18 U.S.C. § 922(g) who has "three prior convictions . . . for a violent felony or a serious drug offense, or both," 18 U.S.C. § 924(e)(1), ACCA enhancement.   Whereas felon-in-possession convictions generally face a maximum 120-month sentence, see 18 U.S.C. § 922(a)(2), an ACCA-enhanced conviction garners a fifteen-year (180-month) minimum and a maximum of life, see 18 U.S.C. § 924(e)(1).   Although Johnson II invalidated the Residual Clause, an ACCA enhancement will still apply when predicated upon a "violent felony," punishable by imprisonment for a term exceeding one year," that: "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives . . . ."  18 U.S.C. § 924(e)(2)(B) (Residual Clause omitted). See Johnson II, 135 S. Ct. at 2560 ("Invoking so shapeless a provision to condemn someone to prison for 15 years to life" violates the Fifth Amendment's prohibition on vague criminal laws). After Johnson II, then, only enhancements based on non-Residual Clause offenses -- those falling under what are called the elements and enumerated-offenses clauses -- remain valid.  See United States v. Harris, 844 F.3d 1260, 1260 (10th Cir. 2017)("In June 2015, however, the Supreme Court held the residual clause to be unconstitutionally vague . . . leaving only the elements and the enumerated-offenses clauses.").[9]   Johnson II has retroactive application for cases on collateral review.  See Welch v. United States, 136 S. Ct. at 1268.

---

[9]United States v. Harris, 844 F.3d 1260, does not yet have internal pagination.

In Garcia's case, his PSR indicates that the USPO was recommending an ACCA enhancement predicated on Garcia's prior convictions for arson, residential burglary, and possession of a deadly weapon by a prisoner:

> The following prior convictions that were used to trigger this enhancement are as follows: Count 10, Arson (Over $1,000) (Felony), as charged in the Second Judicial District Court, in Albuquerque, New Mexico, case number CR 96-3943; Residential Burglary, as charged in the Second Judicial District Court, in Albuquerque, New Mexico, case number CR 97-3978; and Count 1, Possession of a Deadly Weapon By a Prisoner, as charged in the Second Judicial District Court, in Albuquerque, New Mexico, case number CR 99-548.

PSR at 10. The PSR further recounts, however, Garcia's criminal history, listing that Garcia also has a prior conviction for New Mexico robbery, amongst others. See PSR at 13-14. Indeed, the United States, at the time of sentencing, filed its Notice of intention to seek an ACCA enhancement in which the United States "inform[ed] the defense and the Court that it will be relying upon [Garcia's] violent felony convictions [for robbery, arson, possession of a deadly weapon by a prisoner, and burglary] to animate the enhanced penalty provision[s] of 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4." Notice at 2. There is no dispute in this case whether, after Johnson II, Garcia's conviction for possession of a deadly weapon by a prisoner can constitute an ACCA predicate felony -- it cannot, and only could under the Residual Clause. See Response at 2. Further, the Court agrees that such an offense does not fall under either of the enumerated-offenses clause or the elements clause. It is not enumerated, and simple possession does not meet Johnson I's "violent force" requirement. Johnson I, 559 U.S. at 140 (explaining that it has always been the case that the clause "element the use, attempted use, or threatened use of physical force against the person of another," entails "violent force -- i.e., force capable of causing physical pain or injury to another person"). The issue then is whether, despite the fact that the USPO did not list New Mexico robbery in the PSR's ACCA section, can that conviction

be Garcia's third predicate felony, and, consequently, whether the Court needs to vacate Garcia's sentence regardless, only to resentence Garcia with the same ACCA enhancement.

## II.     THE COURT WILL CONDUCT HARMLESS ERROR REVIEW.

Section 2255 provides:

> A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or Laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  In other words, "collateral attack on a final judgment in a criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice."  Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996).  Here, Garcia has proven by a preponderance of the evidence that Judge Conway applied the ACCA enhancement, in part pursuant to the Residual Clause.  Cf. United States v. Harris, 844 F.3d at 1260 (concluding that the ACCA enhancement was applied pursuant to a conviction qualifying only under the Residual Clause, but that Defendant nonetheless had the requisite amount of convictions).  Even though that error occurred, however, the Court must still determine whether that error should be subjected to harmless error review in the context of a § 2255 petition, an analysis that turns on whether a court harbors "grave doubt" whether the error "ha[d] a substantial effect or influence on determining" a defendant's sentence.  O'Neal v. McAninch, 513 U.S. 432, 435, 436 (1995)(authorizing harmless error review, and holding "we conclude that, when a habeas court is in grave doubt as to the harmlessness of an error that affects substantial rights, it should grant relief").  The application of harmless error becomes

primarily relevant, because, if the Court does not conclude that Judge Conway committed harmless error, Garcia must be resentenced even though the ACCA enhancement could nonetheless apply.

A majority of courts hearing § 2255 petitions in this context have concluded that harmless error review may be applied, when appropriate, in the consideration of Johnson II collateral attacks. See United States v. Hicks, 2016 WL 5672949, at *3 (collecting cases).[10] One court, however, has disagreed:

> Harmless error is a defense, the proof of which lies on the government, and which may be waived by not expressly arguing it, see, e.g., United States v. Dominguez Benitez, 542 U.S. 74, 82 n.7 (2004). The defense may only be raised against "trial errors," and may not be used to defend against "structural errors" such as those that "affect the entire framework within which the trial proceeds, rather than simply an error in the trial process itself." Peck v. United States, 106 F.3d 450,

_____

[10]See, e.g., United States v. Scott, 818 F.3d 424, 435 (8th Cir. 2016)(agreeing with the United States that, "even if the district court erred by relying on the residual clause, the error was harmless, since Scott's two domestic assault convictions and his robbery conviction also qualify as crimes of violence under clause (1), the 'use of force' clause"); United States v. Jean, 636 Fed. Appx. 767, 770 (11th Cir. 2016)(noting that court would disregard Johnson error would be disregarded if it was harmless "because it does not affect the sentence imposed"); United States v. Winston, 2016 U.S. Dist. LEXIS 126751, at *18-19 (W.D. Va. 2016)(Moon, J.)(applying harmless error review -- "[e]ven applying Johnson I's narrowing of the force clause, robbery still qualified as a predicate offense [within another ACCA clause]"); Wiggan v. United States, 2016 U.S. Dist. LEXIS 103746, at *45 (D. Conn. 2016)(Underhill, J.)(effectively applying harmless error review in concluding that, "[b]ecause the government failed to establish that Wiggan had at least three prior convictions that would qualify as violent felonies under the Elements Clause [i.e., instead of the unconstitutional Residual Clause], Wiggan has shown that actual prejudice resulted from his prior sentencing proceeding"); United States v. Ladwig, 2016 U.S. Dist. LEXIS 92740, at *9-10 (E.D. Wash. 2016)(Whaley, J.)(noting that the Johnson violation "would be harmless only if the Court's finding that Mr. Ladwig's attempted rape and burglary convictions constitute violent felonies could be justified under one of the two remaining effective clauses of the ACCA"); Lewis v. United States, 2016 U.S. Dist. LEXIS 32700, at *7-8 (S.D. Fla. 2016)(Seitz, J.)(noting that, "[r]egardless of whether a district court relies on the ACCA's residual clause to enhance a sentence, there is no prejudicial error if the predicate offense also qualifies as a violent felony under the elements clause"). But see, Villanueva v. United States, 2016 WL 3248174, at *8-9 (stating that "[t]aking the Residual Clause out of the equation so substantially alters the framework of ACCA that a Johnson violation can hardly be said to be anything other than 'structural error,'" but going on to hold that, even if harmless error review applied, "the error was not harmless").

> 454 (2d Cir. 1995). . . .   Taking the Residual Clause out of the equation so
> substantially alters the framework of ACCA that a [Johnson II] violation can
> hardly be said to be anything other than "structural error," which is unamenable to
> harmless error review.

Villanueva v. United States, 2016 WL 3248174, at *8-9 (D. Conn. 2016)(Hall, C.J.).  The Court

agrees with the majority view, because it concludes that Johnson II error is not necessarily

structural, and, accordingly, will conduct harmless error review for Garcia's case.  Further, the

Court cannot say, here, that it harbors "grave doubt" whether the error -- Judge Conway's

reliance on the Residual Clause -- "ha[d] a substantial effect or influence on determining" a

defendant's sentence.  O'Neal v. McAninch, 513 U.S. at 435.  The Court is especially convinced

of this conclusion that harmless error review is appropriate, at least in this case, because Garcia

was sufficiently put on notice that the New Mexico robbery conviction could be used to enhance

his sentence.  Indeed, Garcia, in his Plea Agreement, acknowledged its existence.  See Plea

Agreement at 5.  Even if, however, Garcia did not have reason to object at the time of

sentencing, and indeed did not object, the issue is irrelevant -- there is no dispute that he has a

New Mexico robbery conviction.  The Court should be able to consider it.  It does not disappear.

Accordingly, the Court must now determine whether Garcia's New Mexico robbery

conviction can constitute a predicate violent felony for ACCA's purposes -- a determination that,

as the Tenth Circuit recently provided,

> questions what should be the obvious: That statutory robbery is a "violent felony"
> under [ACCA].  But in the last twelve months, eleven circuit-level decisions have
> reached varying results on this very narrow question -- in examining various state
> statutes, five courts have found no violent felony and six have found a violent
> felony.  So the obvious may not be so plain.

United States v. Harris, 844 F.3d at 1260.

III.   **THE UNITED STATES HAS NOT WAIVED RELIANCE ON THE ROBBERY CONVICTION, NOR HAS GARCIA WAIVED HIS ABILITY TO OBJECT TO THE ROBBERY CONVICTION'S USE FOR ACCA ENHANCEMENT.**

The Court pauses briefly to address Garcia's Objections regarding waiver, on his account and on the United States' behalf, because of the failure to list New Mexico robbery in the PSR's ACCA section, Garcia's failure to object to the robbery conviction's inclusion in the PSR, and the United States and Judge Conway's failure to explicitly recognize New Mexico robbery's stature as an ACCA predicate felony.  See Objections at 4-10.  The analysis is similar, but the Court takes the arguments in turn, ultimately agreeing with the sound analysis that Judge Martínez employed in the PFRD.  At the outset, because the Court is reviewing the PFRD de novo, Garcia's first Objection -- that Judge Martínez erred by not taking into account Garcia's arguments made in response to the MOO -- is rendered moot.  Turning, then, to Garcia's next argument, that he "has demonstrated the government waived reliance on [Garcia's] conviction to establish his ACCA eligibility," and that Judge Martínez erred by discounting the waiver principles discussed in McCarthan on the ground that McCarthan was vacated for rehearing en banc, the Court finds his Objections unavailing.  Objections at 4.  Garcia further contends that "the vacating of *McCarthan* does not undermine the conclusion that the government's failure to object to the PSR's and the district court's omission of the robbery conviction as an ACCA predicate waived [the United States'] reliance on that conviction as an ACCA predicate now," Objections at 5, and that, "[i]n any event, given the government's concession that [Garcia's] robbery conviction is not a valid ACCA predicate, it has certainly now waived its reliance on that conviction,"  Objections at 5.

Judge Martínez, in her PFRD, correctly explained that the United States filed a Notice of intention to seek an enhanced sentence pursuant to ACCA, in which it included Garcia's robbery

offense as one of the qualifying prior convictions.  See PFRD at 9 (citing Notice at 4-5).  Judge

Martínez also correctly concluded that this Notice, which the United States filed with the Court

after the PSR was disclosed, as well as the inclusion of Garcia's robbery conviction in his PSR's

listing of criminal history, Judge Conway's statement that Garcia is a six-time convicted felon,

and the Plea Agreement in which Garcia admitted that he had previously been convicted of

robbery, were sufficient to put Garcia on notice that the robbery conviction could be used to

enhance his sentence.  See PFRD at 9.  Indeed, Judge Conway stated at the sentencing hearing

that "[t]he Court has reviewed the presentence report factual findings and has considered the

sentencing guideline applications and the factors set forth in 18 United States Code 3553(a)(1)

through (7) including finding the defendant is an armed career criminal," which the Court notes

makes clear that Judge Conway relied on the PSR in whole, and not necessarily just the PSR's

ACCA section.  Tr. at 5:19-23 (Conway).  Judge Martínez concluded that Garcia's reliance on

McCarthan was not persuasive, because that case could, instead, support a conclusion that the

sentencing court relied on all of Garcia's ACCA-qualifying convictions in imposing his ACCA

enhancement, and, regardless, because the Court is not bound to follow the holding of this

vacated Eleventh Circuit case.  See PFRD at 12-13 (discussing McCarthan, which involved a

variety of convictions, and a district court which did not indicate in any fashion on which

convictions it was relying on when imposing the original ACCA enhancement).  The Court

agrees with Judge Martínez that McCarthan does not support a finding that the United States

waived reliance on Garcia's robbery conviction to establish his ACCA eligibility, and the Court

concludes that Garcia's Objection on this point thus lacks a sound basis in the case's facts and in

the applicable law.

Garcia's next argument is confusing, but likely was inspired by the United States' Response at 2. Garcia contends that he did not forfeit his ability to challenge the inclusion of his robbery conviction as an ACCA predicate on § 2255 review by failing to object to Judge Conway's failure to explicitly incorporate that conviction as an ACCA predicate in the PSR at the time of sentencing. See Objections at 5-6 (discussing the United States' argument that Garcia waived his ability to object to use of the robbery conviction by not objecting at the sentencing hearing, see Response at 2). The Court agrees. Garcia contends that, because the PSR specified three convictions, not including the robbery conviction, Garcia had no obligation to object to the PSR to maintain his Objections to the non-enumerated felony of New Mexico robbery in his § 2255 petition, simply because he knew upon which convictions listed in the PSR Judge Conway would, likely, explicitly rely to impose an ACCA enhancement. See Objections at 5-6.

In the PFRD, Judge Martínez correctly considered and rejected Garcia's reliance on McCarthan on this point. See PFRD at 10-13 (citing Motion at 16). In discussing why McCarthan does not necessarily support a finding that Garcia's robbery conviction cannot now be used to support an ACCA enhancement, Judge Martínez first explained that it is not clear that Judge Conway in Garcia's underlying criminal case did not consider Garcia's robbery conviction when he sentenced Garcia. See PFRD at 12. Judge Martínez explained that, in McCarthan, the Eleventh Circuit concluded that the identification of a defendant's predicate convictions in the PSR was sufficient to support an ACCA enhancement, even though neither the PSR nor the sentencing court identified which of the prior convictions were being used to support that enhancement. See PFRD at 12 (citing McCarthan, 811 F.3d at 1253-54). The Eleventh Circuit states that

> McCarthan did not object to the PSR's failure to identify which of his prior convictions justified an ACCA enhancement.  Nor did McCarthan object to the sentencing court's adoption of the PSR, or its failure to identify specific prior convictions in support of its imposition of an ACCA enhancement. . . .  On these facts, McCarthan forfeited any objection to the sentencing court's failure to identify the specific convictions supporting his ACCA enhancement.  We must, therefore, assume that the district court relied on all of McCarthan's ACCA-qualifying convictions in imposing McCarthan's ACCA enhancement.

McCarthan, 811 F.3d at 1253-54.  Judge Martínez explained that, while Garcia's PSR identifies which convictions were used for the probation officer's ACCA conclusions and does not specifically include Garcia's robbery conviction as one of those convictions, the PSR, nonetheless, includes the robbery conviction in Garcia's criminal history section, Judge Conway noted that Garcia had six prior convictions, the United States subsequently filed a Notice to seek an enhanced sentence under ACCA which included Garcia's robbery conviction, and the robbery conviction is included in the Plea Agreement in which Garcia admitted that he had previously been convicted of robbery.  See PFRD at 9, 13.  Conway also stated that he had reviewed "the presentence report factual findings and has considered the sentencing guideline applications and the factors set forth in 18 United States Code 3553(a)(1) through (7) including finding the defendant is an armed career criminal," thus, while not adopting the PSR per se, he did rely on it in its entirety, and made the ACCA finding accordingly.  Tr. at 5:19-23 (Conway).  Thus, Judge Martínez concluded that, because Garcia, as did the defendant in McCarthan, failed to object to the PSR's failure to list robbery as a qualifying ACCA conviction, failed to object to Judge Conway's adoption of the PSR, or Judge Conway's failure to identify robbery specifically in support of its imposition of an ACCA enhancement, Garcia "forfeited any objection to the sentencing court's failure to identify the specific convictions supporting his ACCA enhancement," and that the facts in McCarthan support the opposite assumption, that the sentencing court here relied on all of Garcia's ACCA-qualifying convictions in imposing his

ACCA enhancement.  PFRD at 13 (quoting McCarthan, 811 F.3d at 1253-54).  The Court agrees with Judge Martínez that, for all of the above-stated reasons, Garcia was sufficiently put on notice that the robbery conviction could be used to enhance his sentence -- then, and now.  He did not waive his right to object to the conviction by failing to object specifically at the time of sentencing, and the United States did not waive the right to rely on the conviction now on § 2255 review.

Next, and last, Garcia contends that Judge Conway "definitely did not rely on [Garcia's] robbery conviction to justify [Garcia's] ACCA sentence," a similar argument to that he made regarding his waiver because of failure to object.  The Court concludes that the record supports Judge Martínez' determination in her PFRD that it is unclear whether Judge Conway relied on the robbery conviction, based on the PSR's inclusion of this conviction in Garcia's criminal history, see PSR ¶ 30, at 13, Judge Conway's statement that Garcia was a six-time convicted felon, see Tr. at 10:5-6 (Conway), the United States' Notice of intention to seek an enhanced sentence pursuant to ACCA, in which it included the robbery offense as one of the qualifying prior convictions, see Notice at 1, and the Plea Agreement in which Garcia admitted that he had previously been convicted of robbery, see Plea Agreement at 4-5.  The Court, therefore, sees no error by Judge Martínez as to this conclusion.  Again, however, even if Garcia did not have reason to object at the time of sentencing, and did not object, these issues raised by Garcia are irrelevant.  There is no dispute that he has a robbery conviction, and the conviction's existence cannot be waived.  The Court can consider it.  It does not disappear.  What Judge Conway did with it, or did not do with it, ten years ago is irrelevant.  The Court therefore overrules this series of Objections and proceeds to consider whether New Mexico robbery is a "violent felony."

IV.    **A NEW MEXICO ROBBERY IS A "VIOLENT FELONY" UNDER THE ACCA.**

If a New Mexico robbery constitutes a "violent felony" under ACCA, then, by applying harmless error review, Garcia continues to have three predicate felonies supporting his ACCA enhancement.  The Tenth Circuit, in an opinion authored by Chief Circuit Judge Tymkovich and joined by Circuit Judges Ebel and Bacharach, recently mapped out the relevant analysis in United States v. Harris, where it considered whether Colorado's robbery statute, making it an offense to "knowingly take[ ] anything of value from the person or presence of another by the use of force, threats, or intimidation," Colo. Rev. Stat. § 18-4-301(1)(2016), requires "violent force" sufficient to qualify as an ACCA predicate felony under the elements clause.  See United States v. Harris, 844 F.3d at 1260.  The Tenth Circuit concluded that the Colorado robbery statute at issue requires "violent force" sufficient for ACCA's elements clause, and the Court, in accordance with the Tenth Circuit's guidance, reaches the same conclusion for the New Mexico robbery statute at issue in this case.

The Tenth Circuit explains that, "[t]o determine if a prior conviction qualifies as a violent felony under [] ACCA, we apply the categorical approach, focusing on the elements of the crime of conviction, not the underlying facts."  United States v. Harris, 844 F.3d at 1260 (citing Descamps v. United States, ___ U.S. ___, 133 S. Ct. 2276, 2283 (2013)).  The question, then, according to the Tenth Circuit, that the Court must resolve is whether New Mexico's robbery statute "'has as an element the use, attempted use, or threatened use of physical force against the person of another.'"  United States v. Harris, 844 F.3d at 1260 (quoting § 924(e)(2)(B)(i)).  Resolving that question "requires application of both federal law and [] state law.  Federal law defines the meaning of the phrase 'use, attempted use, or threatened use of physical force' in § 924(e)(2)(B)(i)."  United States v. Harris, 844 F.3d at 1260 (citing Johnson I, 559 U.S. at 138,

- 48 -

(2010)("The meaning of 'physical force' in § 924(e)(2)(B)(i) is a question of federal law. . . ."));
Leocal v. Ashcroft, 543 U.S. 1, 9 (2004)(applying federal law to define "use")).  Regarding the
crime's substantive elements, however, the Tenth Circuit advises that the Court must look to
state law construing the statute of conviction.  See United States v. Harris, 844 F.3d at 1260
(citing Johnson I, 559 U.S. at 138 ("We are . . . bound by the Florida Supreme Court's
interpretation of state law, including its determination of the elements of [the crime of
conviction].")).

        The Court pauses to note that, by its reliance on Johnson I, the Tenth Circuit is -- albeit
without discussion -- implicitly disagreeing with Judge Martínez' conclusions regarding Johnson
I's retroactive impact on collateral § 2255 review.  See PFRD at 15.  The Supreme Court in
Johnson I clarified that the term "physical force" in § 924(e)(2)(B)(i) must be "strong physical
force," "a substantial degree of force," or "*violent* force -- that is, force capable of causing
physical pain or injury to another person," Johnson I, 559 U.S. at 140 (emphasis in original)).
See PFRD at 15.  Judge Martínez concluded that "neither the Tenth Circuit nor the Supreme
Court have held that [Johnson I] should apply retroactively."  PFRD at 16.  Judge Martínez did
not hang her ultimate disposition on that conclusion, however, as she further concluded that the
relevant question is not whether Johnson I is retroactive, see PFRD at 16, but instead, because
Garcia's conviction must be vacated pursuant to Johnson II given that it was based on ACCA's
Residual Clause, Garcia is entitled to resentencing, and the relevant question is whether the
Court must apply the holding of Johnson I at the time of Garcia's resentencing, see PFRD at 16-
17 (citing 28 U.S.C. § 2255(a), which provides that a prisoner whose sentence was imposed in
violation of the Constitution or laws of the United States is entitled to have his sentenced
vacated, set aside, or corrected).  The Court has already disagreed with the PFRD's suggestion

that harmless error review does not apply in this case, and thus is forced to address the retroactivity inquiry, which the Court concludes is not really an inquiry at all.  Settled rules of law -- meaning those dictated by precedent existing when a defendant's conviction becomes final -- apply retroactively on collateral review.  See Chaidez v. United States, ___ U.S. ____, 133 S. Ct. 1103, 1107 (2013)(stating that unless a Teague[11] exception applies, "[o]nly when [the Supreme Court] appl[ies] a settled rule may a person avail herself of the decision on collateral review.").  There are, however, procedural rules under § 2255 which limit a habeas petitioner's rights on collateral review.  Such a petitioner has one year from: (i) his date of conviction; (ii) the date on which a government-created impediment to making such a motion is removed; (iii) the date on which the facts supporting the claims presented could have been discovered; or (iv) "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  28 U.S.C. § 2255(f).

It is undisputed that Johnson I applied a settled rule of law in confirming that, by ACCA's element clause, Congress envisioned "violent force" as a necessary requirement. Johnson I, 559 U.S. at 142 ("We think it clear that in the context of a statutory definition of 'violent felony,' the phrase 'physical force' means violent force -- that is, force capable of causing physical pain or injury to another person.").  The retroactivity analysis, then, becomes

---

[11]Teague v. Lane, 489 U.S. 288 (1989).

*Teague* makes the retroactivity of our criminal procedure decisions turn on whether they are novel.  When we announce a "new rule," a person whose conviction is already final may not benefit from the decision in a habeas or similar proceeding.  Only when we apply a settled rule may a person avail herself of the decision on collateral review.

Chaidez v. United States, 133 S. Ct. at 1107.

irrelevant; Johnson I is retroactive, because it has always been the law -- at issue, then, is primarily the timing restrictions under § 2255.  Cf. United States v. Harris, 844 F.3d at 1260 (applying Johnson I without hesitation).  In contrast to United States v. Harris, in United States v. Taylor, 2016 WL 7092905, at *3 (10th Cir. 2016), the Tenth Circuit, in an opinion Circuit Judge McHugh authored, and Circuit Judges Briscoe and Gorsuch joined, denied a § 2255 petitioner's opportunity for relief, because a Supreme Court case -- Mathis v. United States, ___ U.S. ___, 136 S. Ct. 2243 (2016) -- merely confirmed an old rule relevant to that petitioner's case, and thus could not avail that petitioner any § 2255 relief "in a § 2255 petition filed nearly fifteen years after the judgment in his criminal case became final."  United States v. Taylor, 2016 WL 7092905, at *3.  That case was similarly inspired, as was Garcia's and the petitioner in United States v. Harris, by Johnson II.  See United States v. Taylor, 2016 WL 7092905, at *1-2.  A primary difference, the Court concludes, between United States v. Taylor, and United States v. Harris and Garcia's case, is reliance on pre-Johnson II caselaw -- Mathis v. United States, 136 S. Ct. 2243, postdated Johnson II.  Unlike in United States v. Taylor, Garcia and the petitioner in United States v. Harris do not make untimely Johnson I-based § 2255  petitions, because without Johnson II, their prior convictions would continue to warrant ACCA enhancement under the Residual Clause.  See, e.g., Fugitt v. United States, 2016 WL 5373121, at *3 (W.D. Wash. 2016)(Leighton, J.); United States v. Ladwig, 2016 WL 3619640, at *5 (E.D. Wash. 2016)(Whaley, S.J.).  Cf. United States v. Harris, 844 F.3d at 1260 (applying Johnson I without hesitation).  To the extent that United States v. Taylor counsels differently, the Court concludes that it was wrongly decided in light of the Tenth Circuit's opinion in United States v. Harris, which entertained a § 2255 petitioner's Johnson I claim without hesitation -- ostensibly applying the logic that, because Johnson I became applicable only upon Johnson II's undoing of the

Residual Clause in that case, no timeliness concerns existed.   See 28 U.S.C. § 2255(f) (explaining that a petitioner has one year from the date on which a government-created impediment to making such a motion is removed).   The Court, accordingly, concludes that Johnson I confirmed the standard that the Court must apply to Garcia's case regarding New Mexico robbery's satisfaction of ACCA's elements clause.   Cf. United States v. Harris, 844 F.3d at 1260 (applying Johnson I without hesitation).   The § 2255 petition is further timely, in contrast to the petition in United States v. Taylor, because Garcia's petition became viable only upon the Supreme Court's issuance of Johnson II.   The Court will thus follow the example of United States v. Harris, 844 F.3d at 1260, and determine whether New Mexico's robbery statute satisfies Johnson I.

Accordingly, the Court must consider whether New Mexico's robbery statute entails as "an element the use or threatened use of [violent] physical force."   United States v. Harris, 844 F.3d at 1260.   The Tenth Circuit, in United States v. Harris, detailed the history of Johnson I, and how the violent, physical force requisite to meets ACCA's element clause exceeded the force appurtenant to common-law battery.   See United States v. Harris, 844 F.3d at 1260 ("Indeed, the Court was differentiating between the force required for the common law offense of battery."). It is thus "[w]ith that understanding of 'physical force' in mind -- that is, physical force means violent force, or force capable of causing physical pain or injury to another person" -- that the Court must consider whether New Mexico's "robbery statute has as an element the use or threatened use of physical force."   United States v. Harris, 844 F.3d at 1260.

In United States v. Harris, the Tenth Circuit investigated the history of robbery in Colorado, highlighted that "robbery in Colorado requires a violent taking" commensurate with common-law robbery's "violence associated with the taking," and thereby concluded that

Colorado "remains committed to the common law definition of robbery," which entails "robbery by 'force' [that] categorically matches the definition of 'physical force' assigned by the Supreme Court in Johnson I."  844 F.3d at 1260.  Then, because the Supreme Court requires that the application of the categorical approach be aimed at the "least culpable conduct criminalized by the state statute," Moncrieffe v. Holder, 133 S. Ct. 1678, 1684 (2013), the Tenth Circuit considered whether, in Colorado, "the constructive-force means in Colorado's robbery statute -- i.e., by threats or intimidation -- require the use or threatened use of physical force," United States v. Harris, 844 F.3d at 1260.  The Tenth Circuit emphasized that "the starting point to answering this question is the Colorado Supreme Court's express word."  United States v. Harris, 844 F.3d at 1260.  Because the Colorado Supreme Court had held that "'force or fear is the main element of the offense of robbery' . . . [and] 'that the offense of robbery, whether committed by actual force, or by constructive force, [i.]e., threats or intimidation, is a crime involving the use of "force or violence,"'" the Tenth Circuit rejected the argument that the Colorado statute criminalized robbery by coercion without threat of violent, physical force.  United States v. Harris, 844 F.3d at 1260 (quoting People v. Jenkins, 599 P.2d 912, 913, 914 (Colo. 1979)).

New Mexico's robbery statute states: "Robbery consists of the theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence."  N.M. Stat. Ann. § 30-16-2 (emphasis added).  In United States v. Lujan, preceding Johnson I, the Tenth Circuit held that New Mexico's robbery statute fit within ACCA's elements clause, see United States v. Lujan, 9 F.3d at 892.  Judge Martínez, in her PFRD, explained that, because New Mexico's robbery statute does not require "strong physical force," "a substantial degree of force," or "violent force -- that is, force capable of causing physical pain or injury to another person" -- the statute, like Florida's battery statute at issue in

Johnson I, does not constitute "physical force" under § 924(e)(2)(B)(i), and, therefore, recommends denying the United States' argument to the contrary. PFRD at 15 (citing Response at 3-5). The Court disagrees with Judge Martínez' conclusion, because the Supreme Court of New Mexico has held otherwise. See State v. Bernal, 2006-NMSC-050, ¶ 28, 140 N.M. 644, 146 P.3d 289 (Bosson, C.J.).

All of Judge Martínez, Garcia, and the United States rely heavily on consideration of New Mexico's robbery statute by the Court of Appeals of New Mexico. Garcia, arguing that New Mexico robbery does not qualify under the elements clause, cites to, e.g., State v. Hamilton, 2000-NMCA-063, ¶ 8, 129 N.M. 321, 6 P.3d 1043 ("[A]s this Court has stated on several occasions, the force or threatened use of force must be the lever that serves to separate the property from the victim."). The United States, incorrectly, has recently taken the stance that:

> The New Mexico Supreme Court's description of the amount of force required to commit a robbery in New Mexico can be summarized as follows:
>
>> when property is attached to the person or clothing of a victim so as to cause resistance, any taking is a robbery, and not larceny, because the lever that causes the victim to part with the property is the force that is applied to break that resistance; however, when no more force is used than would be necessary to remove property from a person who does not resist, then the offense is larceny, and not robbery.
>
> State v. Curley, 123 N.M. 295, 123 (1997).

MOO Response at 2. State v. Curley, more properly cited as 1997-NMCA-038, ¶ 6, 123 N.M. 295, 939 P.2d 1103, is an opinion of the Court of Appeals of New Mexico, devoid of citation to the Supreme Court of New Mexico's guidance. The Court, beyond disagreeing with the assumption that the proposition in State v. Curley necessarily authorizes robbery in New Mexico

absent physical, violent force,[12] is more persuaded by the Supreme Court of New Mexico's guidance, as was the Tenth Circuit by the Colorado Supreme Court in United States v. Harris, 844 F.3d at 1260 ("The starting point to answering this question is the Colorado Supreme Court's express word.").  Indeed, the Supreme Court of New Mexico has provided the essential gloss on the distinction between larceny and robbery in New Mexico which the Court believes qualifies robbery under ACCA's elements clause by entailing force, or the threat of force, akin to physical, violent force.  See State v. Bernal, 2006-NMSC-050, ¶ 28, 140 N.M. 644, 146 P.3d 289.

In State v. Bernal, the Supreme Court of New Mexico was faced with a double jeopardy problem requiring it to construe the difference between larceny and robbery in New Mexico law. See 2006-NMSC-050, ¶ 28, 140 N.M. 644, 146 P.3d 289.  Chief Justice Richard Bosson, writing for a unanimous court, provided:

> Our Court of Appeals has previously noted that robbery is distinct from larceny because it requires, and is designed to punish, the element of force.  [*State v.*] *Brown*, [1992-NMCA-028, ¶¶ 12-15,] 113 N.M. [631,] 634, 830 P.2d [183,] 186;

---

[12]Indeed, as applied, the Court is convinced that the Court of Appeals of New Mexico's standard results in robbery convictions only where a defendant utilizes Johnson I violent force. A quick survey reveals that taking money from a victim's pocket with force of such a level that it ripped the pocket, entailed hitting the victim and knocking him against a railing, was robbery in New Mexico, and that conduct surely involves violent physical force which satisfies Johnson I. See State v. Martinez, 1973-NMCA-120, at ¶¶ 2, 5, 85 N.M. 468, 513 P.2d 402 (holding that mere snatching is not robbery)(emphasis added).  As well, pulling a bag out from an elderly victim's grasp with force sufficient to knock the victim onto the ground constituted robbery, and that conduct also similarly entails Johnson I force.  See New Mexico v. Segura, 1970-NMCA-66, ¶¶ 3, 7, 81 N.M. 673, 472 P.2d 387.  To the extent that a robbery conviction has stood absent the requisite Johnson I level force, the Court considers that the Supreme Court of New Mexico, in State v. Bernal, to have generally put as much to rest.  See New Mexico v. Verdugo, 2007-NMCA-95, ¶¶ 2, 27, 142 N.M. 267, 164 P.3d 966 (holding that a robbery conviction was supported by the evidence where the defendant pulled and pulled on victim's purse, attempting to pry it from her, with sufficient force to rip the strap altogether, given an instruction that: "Robbery consists of the theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence.").

> *see also* UJI 14-1620 Committee commentary ("The gist of the offense of robbery is the use of force or intimidation."); *State v. Hernandez*, 2003-NMCA-131, ¶ 9, 134 N.M. 510, 79 P.3d 1118 ("A robbery conviction requires that the force or threatened use of force must be the lever that serves to separate the property from the victim." (Internal quotation marks and citation omitted.)). Since robbery generally carries a heavier punishment than larceny, the robbery statute clearly is designed to protect citizens from violence. *Compare* NMSA 1978, § 30-16-1 (2006) *with* § 30-16-2. Robbery is not merely a property crime, but a crime against a person. *State v. Wingate*, [1975-NMCA-035, ¶¶ 4-10,] 87 N.M. 397, 398, 534 P.2d 776, 777 [ ]; *cf. United States v. Lujan*, 9 F.3d 890, 891-92 (10th Cir. 1993)(stating robbery under New Mexico law is a violent felony for purposes of federal career offender statute because it requires the use or threatened use of force). . . . Since the robbery statute is designed to protect citizens from violence, we believe it logical that the legislature intended to allow for separate charges for each individual against whom violence or the threat of violence is separately used.

State v. Bernal, 2006-NMSC-050, ¶ 28, 140 N.M. 644, 146 P.3d 289. The Court does not think the Supreme Court of New Mexico disagrees that the force requisite to suffice robbery in New Mexico entails physical, violent force or threat of such force -- the Supreme Court of New Mexico held, without reservation, that, because "robbery generally carries a heavier punishment than larceny, the robbery statute clearly is designed to protect citizens from <u>violence</u>." <u>State v. Bernal</u>, 2006-NMSC-050, ¶ 28, 140 N.M. 644, 146 P.3d 289 (emphasis added)(stating further that, "[s]ince the robbery statute is designed to protect citizens from violence, we believe it logical that the legislature intended to allow for separate charges for each individual against whom violence or the threat of violence is separately used"). The Court also notes that the Supreme Court of New Mexico approvingly cited to <u>United States v. Lujan</u>, wherein the Tenth Circuit held that New Mexico robbery constituted a violent felony under ACCA, thereby further supporting its view that robbery entails violence in New Mexico. See <u>State v. Bernal</u>, 2006-NMSC-050, ¶ 28, 140 N.M. 644, 146 P.3d 289 (stating "*cf. United States v. Lujan*, 9 F.3d 890, 891-92 (10th Cir. 1993) (stating robbery under New Mexico law is a violent felony for purposes of federal career offender statute because it requires the use or threatened use of force)."). The

Court, consequently, can see no sound reason to depart from the Tenth Circuit's analysis and conclusions in United States v. Harris.  The Court recognizes that there are arguments that have been made in other Courts of Appeals, as Garcia implores, which contradict the conclusions in United States v. Harris.  Indeed, United States v. Harris garnered a concurrence from Circuit Judge Ebel regarding "whether Colorado robbery by means of threat or intimidation requires proof of the same or greater force than the ACCA requires for a 'violent felony.'"  United States v. Harris, 844 F.3d at 1260 (Ebel, J., concurring).  Because, however, the Supreme Court of New Mexico held that "[r]obbery is not merely a property crime, but a crime against a person," State v. Bernal, 2006-NMSC-050, ¶ 28, 140 N.M. 644, 146 P.3d 289, it -- as did the Colorado Supreme Court -- "has rejected the notion that threats against property (*i.e.*, by extortionist means) can support a robbery conviction," thereby alleviating Circuit Judge Ebel's concerns, at least in the majority's eyes, United States v. Harris, 844 F.3d at 1260.  The Court further recognizes that the Colorado Supreme Court appears to have given the Tenth Circuit more to work with than has the Supreme Court of New Mexico.  The Court would have liked more guidance from State v. Bernal, particularly, but must now do its best to consider what the Supreme Court of New Mexico has nonetheless relevantly held.

The Court notes that this conclusion is in line with its own conclusion in Barela, which involved the U.S.S.G. -- as all parties to this case have been quick to note -- which is an area of law that uses similar language to that in the ACCA.  See Beckles v. United States, 616 F. Appx. 415 (11th Cir. 2015)(considering whether Johnson II applied equally to U.S.S.G. language), cert granted by 136 S. Ct. (2016).  Cf. United States v. Madrid, 805 F.3d at 1210 ("The concerns about judicial inconsistency that motivated the Court in *Johnson* lead us [,the Tenth Circuit,] to conclude that the residual clause of the Guidelines is also unconstitutionally vague.  If one

iteration of the clause is unconstitutionally vague, so too is the other."). It was the Court's initial uneasiness with the conclusion, and the United States Attorney's Office's concession, that New Mexico robbery could be a crime of violence under the U.S.S.G., but not under ACCA, which precipitated many of the contentions at issue in this case. In Barela, the Court provided:

> Under the Guidelines, a "crime of violence" can in part be any offense under "federal or state law punishable by imprisonment for a term exceeding one year[] that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another . . . ." U.S.S.G. § 4.B1.2(a)(1). The Guidelines then enumerate a list of several crimes that can constitute crimes of violence. See U.S.S.G. § 4.B1.2(a)(2). These offenses include "burglary of a dwelling, arson, or extortion, [and crimes that] involve[] the use of explosives . . . ." U.S.S.G. § 4.B1.2(a)(2). Although § 4B1.2(a)(2) further states that crimes of violence may also include crimes that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another," the Supreme Court has held identical language in the Armed Career Criminal Act, 18 U.S.C. § 924(3)(2)(B)(ii) to be unconstitutionally vague. Johnson [II], 135 S. Ct. [at] 2554. Every Court of Appeals except the Eleventh Circuit has "held or assumed that Johnson makes the language in § 4B1.2(a)(2) of the Sentencing Guidelines unconstitutional." In re Clayton, 2016 WL 3878156, at *1 (11th Cir. July 18, 2016)(Martin, J., concurring). See United States v. Soto–Rivera, 811 F.3d 53 (1st Cir. 2016); United States v. Welch, ___ F. App'x ___, 2016 WL 536656 (2d Cir. Feb. 11, 2016); United States v. Townsend, 638 F. App'x 172 (3d Cir. 2015); United States v. Frazier, 621 F. App'x 166 (4th Cir. 2015); United States v. Estrada, No. 15-40264, Order (5th Cir. Oct. 27, 2015); United States v. Pawlak, 822 F.3d 902 (6th Cir. 2016); Ramirez v. United States, 799 F.3d 845 (7th Cir. 2015); United States v. Taylor, 803 F.3d 931 (8th Cir. 2015); United States v. Benavides, 617 F. App'x 790 (9th Cir. 2015); United States v. Madrid, 805 F.3d 1204 (10th Cir. 2015); In re Booker, No. 16-3018, Order (D.C. Cir. June 10, 2016).

> The Tenth Circuit expressly provides that "the residual clause is unconstitutionally vague, and cannot be used to justify the enhancement of [a defendant's] sentence." United States v. Madrid, 805 F.3d at 1210. Accordingly, the Court concludes that it cannot use the residual clause in § 4B1.2(a)(2) for classifying robbery as a predicate prior offense of conviction.

> Still, the Tenth Circuit directs district courts to otherwise determine whether robbery is a crime of violence, in accordance with the Guidelines, by inquiring whether: (i) "it is one of the offenses enumerated in the Guidelines or accompanying commentary as a crime of violence;" or (ii) "it 'has as an element the use, attempted use, or threated use of physical force against the person of another.'" United States v. Madrid, 805 F.3d at 1207 (quoting U.S.S.G.

§4B1.2(a)(emphasis added)).  In fact, the Guideline's accompanying commentary lists "robbery" as a crime of violence.  See U.S.S.G. § 4B1.2 cmt., n.1. Such commentary is authoritative "unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." Stinson v. United States, 508 U.S. 36, 38 (1993).

Moreover, the Application Notes to § 2K2.1 -- the section under which the PSR determines the base offense level -- state that "crime of violence" has "the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2." U.S.S.G. § 2K2.1 App., Note 1.  Under the Tenth Circuit's analysis, then, because robbery is listed as an enumerated crime of violence in the accompanying commentary, it constitutes a crime of violence -- so long as New Mexico's robbery definition largely aligns with the generic definition.  See United States v. Madrid, 805 F.3d at 1207 (stating that an offense qualifies as a crime of violence if either: (i) the crime includes the element of force against another person; or (ii) it "is one of the offenses enumerated in the Guidelines or accompanying commentary" (emphasis added)). See also United States v. Kornegay, 2016 WL 877950, at *4 (2d Cir. March 8, 2016)(concluding that, because "robbery is specifically listed as a crime of violence in the applicable Guidelines Commentary," the Second Circuit could affirm the defendant's sentence without resorting to the residual clause); United States v. Mobley, 687 F.3d 625, 629 (4th Cir. 2012)(stating that "[t]he crimes specified in Application Note 1 of the Commentary to § 4B1.2 serve as additional enumerated offenses"); United States v. Hinton, 2016 WL 632447, at *2 (E.D.N.C. Feb. 17, 2016)(Flanagan, J.)(stating that § 4B1.2, n.1 "suggest[s that] offenses enumerated in Application Note 1 may be considered crimes of violence under either § 4B1.2(a)(1) or (2)").

In considering its inclusion amongst the enumerated offenses, the Court must define robbery in "the generic sense in which the term is . . . used in the criminal codes of most states," and then compare those elements to the relevant prior offense of conviction.  Taylor v. United States, 495 U.S. 575, 598 (1990).  Generally, "robbery" is defined as a "common-law felony" that requires a trespassory taking and carrying away of the personal property of another with the intent to steal it, where that property is taken from the person or presence of the other, and the taking is accomplished by means of force or putting in fear.  United States v. Hinton, 2016 WL 632447, at *3 (citing Wayne R. LaFave, Substantive Criminal Law § 20.3 (2d ed.)).  New Mexico's statute adheres to that definition.  See N.M. Stat. Ann. § 30-16-2.  Under the prevailing, generic definition, New Mexico's crime of common-law robbery thus categorically qualifies as the enumerated offense of "robbery."

Furthermore, the Tenth Circuit has already concluded that New Mexico's robbery statute constitutes a crime of violence under § 4B1.2(a)(1).  See United States v. Lujan, 9 F.3d 890, 892 (10th Cir. 1993)("The New Mexico robbery statute also contains the required element of force

. . . .").  As mentioned, Section 4B1.2(a)(1) in part defines "crime of violence" as being any federal or state offense that is punishable by more than one year in prison, and contains an element involving "the use, attempted use, or threatened use of physical force against the person of another."  U.S.S.G. § 4B1.2(a).  New Mexico's robbery definition "consists of the theft of anything of value from the <u>person of another</u> or from the immediate control of another, <u>by use or threatened use of force or violence</u>."  N.M. Stat. Ann. § 30-16-2 (emphasis added).  Contrary to Barela's objection, then, New Mexico's robbery statute specifies that the use of force must be against "the person of another" by providing that the defendant must take a thing of value from another person or that person's immediate control "<u>by</u> use or threatened use of force or violence."  N.M. Stat. Ann. § 30-16-2 (emphasis added).  <u>Cf.</u> <u>United States v. Kornegay</u>, 2016 WL 877950, at *4 (concluding that New York's robbery definition constitutes a "crime of violence" under § 4B1.2(a)(1), because it "prohibits '*forcibly* steal[ing] property")(emphasis and alterations in original)).  The Tenth Circuit thus expressly found that the "New Mexico robbery statute also contains the required element of force" and that the district court appropriately used the robbery conviction to enhance a defendant's sentence.  <u>United States v. Lujan</u>, 9 F.3d at 892.  The Court therefore overrules Barela's first objection, because robbery constitutes a "crime of violence."

<u>Barela</u> MOO at 1-5.  The Court stands by the <u>Barela</u> MOO, and by the guidance from the Tenth Circuit in <u>United States v. Harris</u>, and therefore concludes that New Mexico robbery qualifies as a predicate violent felony for the purposes of ACCA's elements clause.  Accordingly, Judge Conway committed only harmless error, and, because robbery in New Mexico satisfies ACCA's requirements, Garcia's sentence was not unconstitutionally imposed under either <u>Johnson I</u> or <u>Johnson II</u>.  The Court thus overrules Garcia's Objections, adopts in part and denies in part Judge Martinez' PFRD, and denies Garcia's Motion.

The Court also notes, for clarity, that it specifically asked the United States:

1.  If the Court holds that Defendant Phillip Angel Garcia has four predicate violent felonies under ACCA and that, even absent the possession of a deadly weapon by a prisoner, Garcia still has three useable predicate convictions, will the United States defend on appeal the Court's decision to use predicate convictions that Judge Conway and the USPO, at the time of sentencing, did not use?  Will it defend the Court's procedure or will it confess error?  The Court is having a hard time seeing why it should set aside a conviction if, at the new sentencing, it is going to still find that he has three violent predicate convictions.

2.   If the Court determines that <u>Johnson v. United States</u>, 559 U.S. 133, 140 (2010)("<u>Johnson 1</u>"), is not retroactive, will the United States defend that position or confess error?

3.   If the Court determines that, in relevant part, the Florida battery statute in <u>Johnson 1</u> cannot be distinguished from New Mexico's robbery offense, will the United States defend that position or confess error?

4.   If the Court determines that New Mexico's robbery statute is a violent felony for ACCA purposes -- as the United States argued on July 27, 2016, in <u>United States v. Barela</u> -- will the United States defend that position on appeal or confess error?   The Court is having a harder time ignoring the United States Court of Appeals for the Tenth Circuit decision, in <u>United States v. Lujan</u>, 9 F.3d 890 (10th Cir. 1993), than the parties and the USPO are apparently having.

MOO at 4-5.

In answer to the Court's specific questions in the MOO, the United States provides the following answers: (i) the United States will defend on appeal the Court's procedure to use the predicate convictions that Judge Conway and the USPO, at the time of sentencing, did not use, but will also stand by its concession that Garcia's prior conviction for robbery is not a violent felony for the ACCA's purposes; (ii) the United States' position is that the holding of <u>Johnson I</u> is retroactive and it will maintain this position on appeal; (iii) the United States' position is that New Mexico's robbery statute does not require <u>Johnson I</u>-level force and it will maintain this position on appeal; and (iv) the United States' position is that New Mexico's robbery statute is not a violent felony under the ACCA in light of <u>Johnson I</u>, which was issued after the United States Court of Appeals for the Tenth Circuit's decision in <u>United States v. Lujan</u>, 9 F.3d 890 (10th Cir. 1993), and it will maintain this position on appeal.   <u>See</u> MOO Response at 2-3.   The United States, the Court notes, has now also subsequently indicated -- in yet another change of position -- that it is reconsidering its position that robbery in New Mexico does not entail <u>Johnson I</u> force pursuant to <u>United States v. Harris</u>.   <u>See</u> United States' Notice of Supplemental Authority, filed January 13, 2017 (Doc. 32)("In light of this case, the United States is re-

examining its position as to whether New Mexico's third degree robbery similarly qualifies as a violent felony under the ACCA.").

**IT IS ORDERED** that: (i) the objections in Mr. Garcia's Objections to Certain Magistrate Judge's Proposed Findings, filed November 14, 2016 (Doc. 31), are overruled; (ii) the conclusions in the Magistrate Judge's Amended Proposed Findings and Recommended Disposition, filed November 1, 2016 (Doc. 30), are adopted in part and denied in part; (iii) Mr. Garcia's Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255, filed March 30, 2016 (Doc. 1), is denied; and (iv) Mr. Garcia's Motion for Expedited Decision and Resentencing, filed May 27, 2016 (Doc. 8), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon P. Martinez
  United States Attorney
David M. Walsh
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Plaintiff/Respondent*

Michael A. Keefe
  Assistant Federal Public Defender
Office of the Federal Public Defender
Albuquerque, New Mexico

      *Attorney for the Defendant/Movant*